(82 Misc. Rep. 165.)

PEOPLE ex rel. ROBIN v. HAYES, Warden of Penitentiary.

(Supreme Court, Special Term, Ulster County. September 11, 1913.)

1. OFFICERS (§ 73*)—IMPEACHMENT—NATURE OF FUNCTION.

The power of impeachment is a judicial power vested in the Assembly, in which the Governor and Senate cannot participate, and is not a legislative subject.

[Ed. Note.—For other cases, see Officers, Cent. Dig. § 100; Dec. Dig. § 73.*]

2. STATES (§ 52*)—IMPEACHMENT OF GOVERNOR—WHEN POWER MAY BE EXERCISED.

The Constitution empowers the Assembly to impeach the Governor, but it does not specify when the power shall be exercised, and the Assembly is the sole judge of the time as well as the grounds for impeachment, free from control by the executive or the courts.

[Ed. Note.—For other cases, see States, Cent. Dig. §§ 43, 57; Dec. Dig. § 52.*]

3. STATES (§ 52*)—IMPEACHMENT OF GOVERNOR—POWER OF ASSEMBLY TO CONVENE ITSELF.

The Assembly, having been given the judicial power by the Constitution of impeaching the Governor, without limitation as to the time the function shall be exercised, may convene itself for that purpose, though without power to do so ordinarily, as the conferring of a general power carries with it every particular power necessary for its exercise.

[Ed. Note.—For other cases, see States, Cent. Dig. §§ 43, 57; Dec. Dig. § 52.*]

4. STATES (§ 52*)—IMPEACHMENT OF GOVERNOR—EXTRAORDINARY SESSION OF ASSEMBLY.

The impeachment of the Governor by the Assembly while in extraordinary session is valid, though Const. art. 4, § 4, provides that no subject shall be acted on at such a session except such as the Governor recommends, and it had not been recommended, as the power of impeachment is a judicial and not a legislative power and one that should always be independent of outside control.

[Ed. Note.—For other cases, see States, Cent. Dig. §§ 43, 57; Dec. Dig. § 52.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

5. PARDON (§ 4*)—"IMPEACHMENT" OF GOVERNOR—EFFECT ON POWER TO PARDON.

Under Const. art. 4, § 6, providing that "in case of the 'impeachment' of the Governor * * * the powers and duties of the office shall devolve upon the Lieutenant Governor * * * until the disability shall cease," after "impeachment," which is a method of procedure in a criminal case against a high official, the reins of government are transferred to the Lieutenant Governor, and a pardon granted by the Governor while under impeachment is void.

[Ed. Note.—For other cases, see Pardon, Cent. Dig. §§ 4–6½; Dec. Dig. § 4.*

For other definitions, see Words and Phrases, vol. 4, pp. 3419, 3420; vol. 8, pp. 7681, 7682.]

6. HABEAS CORPUS (§ 19*)—PROCEEDINGS REVIEWABLE—VALIDITY OF PARDON.

It is the duty of a court or judge having jurisdiction to entertain proceedings in habeas corpus to protect the liberty of a prisoner, though his right depends on a pardon, in passing on the validity of which a different conclusion may be reached as to the powers of the Governor while under impeachment from that of the Court of Impeachment.

[Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. § 17; Dec. Dig. § 19.*]

7. HABEAS CORPUS (§ 92*)—SCOPE OF INQUIRY—PARDON BY GOVERNOR WHILE UNDER IMPEACHMENT—VALIDITY OF IMPEACHMENT.

In habeas corpus proceedings by a prisoner to secure his freedom on the strength of a pardon, the court has no jurisdiction to inquire into the sufficiency of charges for which the Governor was under impeachment when the pardon was issued, nor whether the proceedings were properly conducted, unless at their foundation the Constitution is violated.

[Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. §§ 81, 83, 87–96; Dec. Dig. § 92.*]

8. HABEAS CORPUS (§ 65*)—LEGISLATIVE RESTRICTIONS UPON HABEAS CORPUS—WHERE WRIT MAY BE MADE RETURNABLE.

The right of a court or justice having jurisdiction to grant writs of habeas corpus to protect the liberties of the people cannot be restricted by the Legislature, and the writ may be made returnable to another county than that in which the prisoner is restrained, though a court be in session in that county, regardless of legislative provisions.

[Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. §§ 58, 59, 80; Dec. Dig. § 65.*]

Habeas corpus by the People, on the relation of Joseph G. Robin, against Patrick Hayes, Warden of New York Penitentiary. Writ quashed, and relator remanded.

Benjamin F. Tracy, William S. Bennet, and Robert D. Ireland, all of New York City, for relator.

A. R. Watson, of New York City (Asst. Dist. Atty. Clarke, of counsel), for respondent.

John T. Norton, of Troy, for the Attorney General.

Lynn J. Arnold, of Albany, amicus curiæ.

Edgar T. Brackett, of Saratoga Springs, for Managers of Impeachment, amicus curiæ.

HASBROUCK, J.   A writ of habeas corpus was granted to Joseph G. Robin, a prisoner in the New York penitentiary, upon formal petition, and a writing, purporting to be a pardon of the said Robin,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

signed, "William Sulzer, Governor of the State of New York," and attested by the seal of the state. The warden of the penitentiary has made return to the writ in accordance with its terms and has set forth, among other things, that Governor Sulzer has been lawfully impeached, and that the Lieutenant Governor, Martin H. Glynn, only is competent to discharge the duties of the executive office. Counsel for the relator in support of the writ stand alone upon the pardon. There is no question but that the pardon is sufficient warrant for the restoration of the prisoner to his liberty if Governor Sulzer possessed the authority to grant it.

On the part of the relator, it is pointed out, and there is no dispute of the fact, that on or about the 16th day of June, 1913, Governor Sulzer called an extraordinary session of the Legislature, and that it convened, and has not yet adjourned sine die, and that the Assembly, on or about August 11, 1913, voted to impeach the Governor, and thereafter presented articles of impeachment to the Senate. The journal of the Assembly shows that it had been in session and regularly adjourned to the time and place when the vote of impeachment was had. Against the legality and constitutionality of such act of the Assembly, the relator makes but one objection; i. e., that it is in violation of section 4 of article 4 of the Constitution, which provides:

"The Governor * * * shall have power to convene the Legislature, or the Senate only, on extraordinary occasions. At extraordinary sessions no subject shall be acted upon except such as the Governor may recommend for consideration."

It is urged that this provision contains a prohibition against the consideration by the Assembly of the subject of impeachment; that one of the purposes was to hinder the Assembly when in such extraordinary session from impeaching the Governor; that the only time when the Assembly could consider the subject of impeachment was when it was in regular session; and that it has no power to convene and sit except at regular and extraordinary sessions. In other words, having adjourned sine die in any year, it is without power, no matter what hideous acts of crime or monstrous acts of tyranny or usurpation a Governor may be guilty of, to set the machinery of his punishment in motion until the stated day of the meeting of both branches of the Legislature.

[1] The subject of impeachment, like the power of a legislative body to punish for contempt, has a different character from subjects requiring the action of both branches of the Legislature and of the Governor in order that laws may be enacted. The power conferred upon the Assembly to impeach the Governor is a judicial power. Speaking of the division of powers under our Constitution, Judge Rapallo of the Court of Appeals says:

"Notwithstanding this general division of powers, certain powers in their nature judicial are, by the express terms of the Constitution, vested in the Legislature. The power of impeachment is vested in the Assembly." People ex rel. McDonald v. Keeler, 99 N. Y. 482, 2 N. E. 615, 52 Am. Rep. 49.

The power of impeachment, therefore, being a judicial power of the Assembly, cannot be participated in by the Governor or the Senate,

and therefore does not constitute a legislative subject. Having no power in the premises, an acting Governor could not call the Assembly into session for the purpose of impeaching an absent Governor. Neither is the Assembly shorn of its impeaching power by the summons of the Legislature in extraordinary session. The whole design of constitutional government would fail of protection of popular rights and relief from oppression and wrong against those in exalted place, if there were no independence nor power in the Assembly to make impeachments.

[2] Judge Cooley, in his great work on Constitutional Limitations, says:

"In considering state Constitutions we must not commit the mistake of supposing that, because individual rights are guarded and protected by them, they must also be considered as owing their origin to them. These instruments measure the powers of the rulers, but they do not measure the rights of the governed." Cooley's Cons. Lim. (3d Ed.) 36.

The measure of the power of our rulers in the Assembly as respects the Governor is that it may impeach him. Once impeached, that function ends. What time during its yearly office, the Constitution does not specify. The Assembly is the Assembly, whether in regular or extraordinary session or whether self-convened. It is the sole impeaching functionary, and in its exercise of power it is beyond the let or hindrance of the executive or the courts. It is the exclusive and final judge of the occasion or time it shall select to impeach, and of the acts of the Governor it may specify as grounds for impeachment. This great power is political. History is replete with illustrations of its use and abuse. It is reserved to the state for its preservation and the destruction of its enemies and is beyond the control of every court except the court empowered to try the impeached and find his guilt or innocence. Martin v. Mott, 12 Wheat. 29, 6 L. Ed. 537; Matter of Guden, 171 N. Y. 529, 64 N. E. 451; People ex rel. Broderick v. Morton, 156 N. Y. 136, 50 N. E. 791, 41 L. R. A. 231, 66 Am. St. Rep. 547.

[3] The argument that the Assembly clothed with the power to impeach has no power to convene itself for such purpose has little to commend it, for it is at war with that interpretation of our federal and state Constitutions which have made them equal to all the vicissitudes involved in a century and a third of national life. Judge Cooley has stated the rule with precision:

"Where a general power is conferred or duty enjoined, every particular power necessary for the exercise of the one or the performance of the other is conferred." Cooley's Cons. Lim. p. 63; People ex rel. McDonald v. Keeler, 99 N. Y. 463, 2 N. E. 615, 52 Am. Rep. 49.

The case of People ex rel. Carter v. Rice, 135 N. Y. 485, 31 N. E. 924, 16 L. R. A. 836, does not aid the contention of the relator. Judge Peckham in it says:

"The Constitution provides for the assembling of the Legislature on the first Tuesday in January in each year. When it adjourns sine die, has not the session of the Legislature ended? The term of office of its members may not have ended, but the legislative session has certainly terminated by an adjournment without day. It could not again assemble and perform any valid

act unless the Governor, under the special power given him by the Constitution, should convene it."

This language has reference only to the Legislature. It was not written of or concerning the Assembly as an independent state body exercising a function of a judicial character.

[4] These considerations lead to the conclusion that the Governor has been lawfully and constitutionally impeached.

[5] The relator claims that, even so, disability does not fall upon the Governor until the court has tried the issues raised by the articles and the plea thereto.

The common-law and statutory right of the accused to the presumption of innocence is invoked as being at war with an interpretation of the Constitution that would warrant the suspension of the Governor from his office. Professor Dwight, in writing of impeachments in England and under the Constitution of the United States, says of the impeached:

"The law still presumes his innocence." Am. Law Reg. N. S. vol. 6, p: 261.

But there is a wide difference between the state and the national Constitution on the result of the impeachment of the Governor or President. The President by impeachment is not suspended in or ousted of his functions, and therefore the rule of the presumption of innocence remains undisturbed. Under our Constitution, if our interpretation of it be correct, this fundamental rule in the criminal law is invaded. For the Constitution provides (article 4, § 6):

"In case of the impeachment of the Governor, or his removal from office, by death, inability to discharge the powers and duties of said office, resignation, or absence from the state, the powers and duties of the office shall devolve upon the Lieutenant Governor for the residue of the term, or until the disability shall cease."

The presumption of innocence may still be claimed by the accused, but he is quite as effectively shorn of his power by this provision, which needs no interpretation and which is perfectly clear, as if a judgment of eviction had been passed against him, unless he is acquitted. For what is disability following impeachment under this section but suspension, and what is suspension but removal from office? It seems an unjustifiable and unreasonable provision. For delay in the prosecution to the end of the term works the same result in the main that judgment of removal would, and delays in such proceedings have been known to be long. The impeachment proceeding against Warren Hastings lasted 13 years. However full of or wanting in reason, the province of the court is only to say what the law is. It holds section 6, to be self-executory and to transfer the reins of power from the hands of the Governor to the Lieutenant Governor. There is no doubt about the meaning of the word "impeachment." It is a method of procedure in a criminal case against a high official. Article 4, § 6, Con. State of New York; Article 6, § 13; Am. Law Reg. N. S. vol. 6, p. 261; Webster's Works, vol. 5, p. 513; Elliot's Fed. Debates, vol. 5, p. 329. Entertaining these views, the conclusion follows that Governor Sulzer was without authority

to grant the relator a pardon, and that the paper purporting to grant it is void.

[6, 7] It was suggested to the court, on the argument by one of the distinguished counsel for the management of the impeachment, that the court ought to refuse to entertain the proceedings for the reason that there might arise a conflict between the Court of Impeachment and the Supreme Court upon the question of where the right to discharge the duties of the executive office reposed at the date of the pardon. The difficulty with the suggestion lies in the fact that the primary duty of the court here is to investigate the right of the prisoner to release from his imprisonment. To accept the suggestion would be to invade his privilege to the great shield of liberty. Has the Court of Impeachment any jurisdiction to grant and sustain or quash this great writ? Clearly it has not. The duty of the court or judge with jurisdiction, then, is to entertain the proceeding. It can protect the liberties of the prisoner. It has no jurisdiction to inquire into the sufficiency of charges for which a Governor may be impeached, nor, I take it, whether the proceedings looking to that end were properly conducted, unless at their foundation, in their exercise, constitutional guaranties are broken down or limitations ignored. Story on Const. Law, §§ 374 and 379.

[8] The objection that the writ was improperly made returnable at Kingston has not been overlooked; and since the argument I have re-examined the objections which occurred to me at the time of its issuance. Before the issuance of the writ, my attention was not called to People ex rel. Whitman v. Woodward et al., 150 App. Div. 770, 135 N. Y. Supp. 373, decided May 2, 1912, as a support to the objection raised by the learned corporation counsel. The right of a justice to make a writ returnable in another county than that in which the prisoner is restrained, where a court is in session in such county, not neglecting appreciation of the learned opinion in the Hyde Case, still remains in doubt. The Appellate Division in the Second Department has held, if I correctly apprehend its substance, that the Legislature had no power to place restriction upon the use of the writ by judges in courts having jurisdiction to grant it (People ex rel. Patrick v. Frost, 133 App. Div. 180, 117 N. Y. Supp. 524) and decided in accordance with its opinion. But in the Hyde Case, while it stated the law quite the other way, its decision did not conform to its view, for it issued no prohibition against Judge Woodward acting on the return in the habeas corpus proceeding. Since then, and on June 21, 1912, the Court of Appeals has decided the case of People ex rel. Martin F. Hubert v. Harry M. Kaiser, 206 N. Y. 46, 99 N. E. 195, in which the writ issued by Judge Gerard to the warden of Dannemora Prison required him to produce Brandt before the judge in New York. This decision, though the question was not discussed in the court's opinion, would seem to approve at least the jurisdiction of Judge Gerard in the premises. To attempt to regulate where, in the state, the writ of habeas corpus should be made returnable and the issue tried is to place its privileges under legislative control and to deny them to the citizen. This is not per-

missible.   People ex rel. Tweed v. Liscomb, 60 N. Y. 567, 19 Am.
Rep. 211.   Conditions may arise where local feeling is so intense or
the domination of local officials so complete that a fair trial of the
issues under a writ might not be possible.   The question should have
the authoritative utterance of the Court of Appeals.

Writ quashed, and relator remanded.