JAMES E. FERGUSON v. JOHN F. MADDOX ET AL.

No. 4183. Decided June 12, 1924.

(263 S. W., 888).

1.—Impeachment—Legislature—Called Session.

A judgment of impeachment by the Senate, involving removal of a state officer and his disqualification for holding office, was not void because the articles of impeachment were presented to the Senate by the House and the trial thereof had at a called session of the Legislature and the Governor's call therefor did not designate such action as a purpose for which it was called. (Pp. 92-95).

2.—Same—Judicial and Legislative Powers.

The Legislature, in impeachment proceedings, exercises the judicial, not the legislative powers conferred, on it by the Constitution. (Const., art. 2, sec. 1; art. 3, secs. 1, 5, 29, 40; art. 4, sec. 28; art. 15, secs. 1-5). Article 3, sec. 40, limits its legislative powers at a special Session called by the Governor, but not its judicial powers. (P. 94).

3.—Impeachment—Expiration of Session—Second and Third Called Session.

Judgment of impeachment by the Senate was not rendered invalid by the fact that the trial was concluded and the judgment rendered, not at the special session at which the articles of impeachment were presented to the Senate, but at a special session called by the Acting Governor on its expiration, for the purpose of completing the trial and disposition of such articles. (Pp. 95, 96).

4.—Same.

The House and Senate, sitting as judicial bodies in impeachment proceedings, are not restricted by legislative sessions. Their participation in an impeachment trial already entered upon was not affected by the expiration of the legislative session at which it was begun. The Senate then becomes a court and continues as such regardless of legislative sessions. (P. 96).

5.—Impeachment—Conduct Punishable.

A judgment of the Senate in impeachment was not void or invalid because neither the Constitution nor statutes of the State defined the specific acts or conduct for which the individual could be removed from office and disqualified within the meaning of Title 1, article 3, of the Penal Code, which article has no bearing on impeachment proceedings. (Pp. 96-98).

6.—Same.

The Constitution was adopted with the understanding of the principles of "impeachment" as established in English and American parliamentary procedure. The wrongs justifying it need not be statutory or common law offenses, nor even offenses against positive law. They were grave official wrongs, official delinquencies or maladministration, definable only in the most general way, and no attempt at definition was usually made. The grant of power sufficiently indicated the causes for its exercise, and the power was not an arbitrary one. (P. 97).

### 7.—Impeachment—Removal from Office—Disqualification.

The Senate, in impeachment proceedings under article 15, section 2, of the Constitution, was authorized by article 15, section 4, to pronounce disqualification for office as well as removal therefrom as a penalty. This is self executing and needs no aid from the Legislature. Chapter 1, of Title 98 of the Revised Statutes does not limit this power by failing to mention disqualification as a penalty on impeachment; and it would be void if it thus attempted to limit the powers conferred on the Senate by the Constitution. (P. 98).

### 8.—Impeachment—Judgment—Resignation of Officer.

The Senate having jurisdiction over the Governor of the State in an impeachment proceeding in which he had appeared and made defense, and having pronounced him guilty on the articles presented, could not, by his filing with the Secretary of State his resignation of office to take effect at once, be deprived of the power to enter its judgment and to attach disqualification for office, as well as removal therefrom, as a penalty. (P. 99).

Questions certified from the Court of Civil Appeals for the First District, in an appeal from Harris County.

Maddox sued Ferguson and the members of the Democratic State Executive Committee and obtained an injunction restraining such committee from placing the name of Ferguson as candidate for Governor of the State on the official ballot for the primary election for the choice of such candidate. On appeal by Ferguson the Court of Civil Appeals certified to the Supreme Court the questions here considered.

Hon. C. M. Cureton and Hon. T. B. Greenwood having certified to the Governor their disqualifications to sit as judges herein, the Governor, on June 4, 1924, commissioned Hon. Alexander Coke and Hon. Howard Templeton as Special Chief Justice and Special Associate Justice respectively, for the disposition of the case.

*Love, Wagner & Wagner,* for appellant.

Impeachment proceedings are regarded by the court as criminal proceedings and, if provided for in the Constitution, are to be governed by any constitutional provisions which regulate criminal proceedings. (State v. Buckley 54 Ala. 599). They are in their nature highly penal, and governed by the rules of law applicable to criminal prosecutions. (State Ex Rel. Attorney General v. Hasty. 63 Southern (Ala.) 559).

It will be noted that while the Constitution of the United States defines the acts or offenses for which the President, Vice-president, and other civil officers of the United States may be impeached and removed from office, there is an entire absence from our constitution of any such definition or statement of the acts or offenses for which a Governor may be impeached or removed from office.

A proper construction of the provisions of the present constitution of Texas relating to impeachment, when considered in connection with

other provisions limiting the powers of the government and protecting the rights and liberties of the citizen, leads to the conclusion that the framers of that instrument intended to and did provide for a tribunal before which impeachment proceedings should be heard and determined, leaving to the Legislature the authority to define the offenses for which such tribunal could impeach a governor. This duty the Legislature had never performed prior to the judgment of impeachment under consideration. It will be noted that the provisions of our Constitution relating to impeachment followed in substantial terms the provisions of the Federal Constitution, except with respect to the provision defining impeachable offenses, which provision was, it must be presumed, purposely and intentionally omitted and no provision was incorporated as a substitute therefor.

In view of the absence of any constitutional or statutory provision defining impeachable offenses, or in any manner suggesting, either expressly or by implication, the causes for which the senate might impeach and remove a governor from office, a situation was presented at the time of the trial and impeachment of the appellant in which the senate either had no authority to impeach a governor, because of the absence of any such definition, or the senate, as the result of the situation, possessed unlimited arbitrary power to impeach a governor, elected by the people for a specified term, for any act which the senate should not approve. Under these circumstances if the senate could impeach a governor at all it could impeach him for taking a drink or refusing to take a drink, for belonging to a political party opposed to that of the members of the senate, for refusing to attend church, for vetoing an act of the Legislature, or for any other act which might be displeasing or offensive to the Senate.

At the time of the adoption of the present constitution there had existed from the time of the republic, as a part of our system of laws, a provision substantially as is now contained in Article 3 of the Penal Code, which reads: ''In order that the system of penal laws in this state may be complete within itself, and that no system of foreign laws, written or unwritten, may be appealed to, it is declared that no person shall be punished for any act or omission, unless same is made a penal offense and a penalty affixed thereto by the written law of this state.''

This provision evidences the early adoption of the doctrine which has been steadfastly adhered to ever since, that no system of foreign laws, customs or rules should be appealed to or applied by way of punishment for any act committed in Texas.

To hold that a governor of Texas could be subjected to removal from office and decreed to be disqualified to hold public office at any time thereafter,—that is, that he could be subjected to such disqualifications as a punishment for acts not defined and a penalty not

affixed thereto by the written law of this state,—is to hold that the framers of our Constitution abandoned the theretofore long established doctrine embodied in the article of the penal code above referred to.

In the case of Cummings v. Missouri, 4 Wall., 277, Law. Ed. 356, the Supreme Court of the United States held the provision of the Constitution of the State of Missouri which disqualified persons who had not subscribed to what was known as "the test oath" from holding office to be void as ex post facto law. In the light of that decision there can be no question but that that portion of the judgment of impeachment under consideration, which decreed the appellant disqualified to hold any office of honor, trust or profit under the State of Texas, was a punishment for acts which he had previously committed and which had never been defined as offenses for which such punishment might be inflicted, and the effort of the Senate to inflict that punishment, under the circumstances, was an effort to subject him to the pains and penalties of an ex post facto law, in plain violation of our own Constitution as well as that of the Federal Union.

That portion of the judgment decreeing a disqualification from holding any other office at any time in the future forms no essential part of the removal proceedings, and is nothing more or less than a punishment inflicted upon him and his family for acts which when committed did not constitute any offense against the law,—or at least did not constitute an offense for which that punishment had been prescribed. The primary purpose of impeachment proceedings is to rid the government of an undesirable officer, (See Advisory Opinion, 64 Fla., 168; Advisory Opinion, 31 Fla., 1; Rawlings v. Loomis, 29 S. W., 415; State v. Crump (Tenn.) 183 S. W., 505.)

We submit therefore that the entire proceedings and judgment by which the appellant was impeached, removed from office and held to be disqualified to hold any office in this state are void; but if not void in their entirety, that that part of said judgment which decreed such disqualification was void and ineffectual.

With reference to the question as to the validity of the judgment of impeachment because the same was rendered after appellant had resigned from office and was no longer governor, we submit that the primary purpose of impeachment proceedings is the removal of a public officer, and deals with the official as such, that such proceedings cannot be effective as to any person whose term of office has ended either by expiration or resignation prior to the entry of a final judgment in such proceedings.

*Guynes & Saunders,* for appellee.

The jurisdiction for the removal and disqualification of Ex-governor Ferguson is originally and exclusively with the Senate as a court of impeachment. 29 Cyc., 414; State v. Dart, 57 Minn., 261; Opinion of the justices, 14 Florida, 289; Federalist, 65; II Willoughby on Constitution, Section 654.

The court having once obtained jurisdiction to try Governor Ferguson on the articles of impeachment, retained that jurisdiction until it disposed of the question. Art. 15, Section 5, Constitution of Texas; Art. 5, Section 16, Constitution of Texas; Fleming v. Seeligson, 57 Texas, 531; Opinion of justices, 14 Florida, 289; State v. Dart, 57 Minn., 261; 15th American & English Encyclopaedia of Law, 2d Edition, p. 1071.

Art. 15, Texas Constitution is self-enactive, and leaves it to the Senate to convict on such offenses as, in their judgment, are sufficient for removal and disqualification. The Senate sitting as a court, is presumed to be governed by the established grounds for removal and to be governed by the grounds which have been established as sufficient for removal and disqualification. Federalist, 65; Cooley's Principles of Constitutional Law, 177-8; Willoughby on Constitution, Section 652 to 654; Black on Constitution, 121.

Every part of the Constitution is presumed to have been enacted for a purpose and should be expected to carry out that purpose. It cannot be presumed it is without effect and any construction which would so result, is not admissible, unless the language renders it imperative. Marbury, v. Madison, 1 Cranch, (U.S.) 137, Second L. Ed. 60.

The implied powers and restrictions to be found in the Constitutional provisions are a very important element to be considered. It is an established rule of construction that when a Constitution confers a power or enjoins a duty, it also confers, by implication, all powers that are necessary for the exercise of the one or the performance of the other. 12 Corpus Juris, Section 73, p. 719.

Ferguson having participated in the impeachment trial until after Articles of Impeachment were sustained and not having resigned theretofore, his resignation came too late. Section 21 of Rule Procedure of the Court of Impeachment.

So long as the Court of Impeachment acted within its jurisdiction, its action will not be reviewed by any ordinary judicial court, for the purpose of adding to, changing, amending or taking anything therefrom, as this would be a collateral attack on a judgment rendered by a court of competent jurisdiction from which there is no appeal. 29 Cyc. p. 1414; Opinion of the Justices, 14 Florida, 289.

MR. CHIEF JUSTICE COKE delivered the opinion of the Supreme Court.

The Court of Civil Appeals for the First District has certified to this Court certain questions, arising in the above suit, with an accompanying statement which we summarize as follows:

The suit was brought by the appellee, John F. Maddox, a resident and qualified democratic voter of Harris County, against James E. Ferguson and the members of the Democratic State Executive Committee, to enjoin the placing of the name of the defendent Ferguson, as a candidate for Governor, on the official ballot at the forthcoming democratic primary, to be held in July, 1924.

The petition alleges and the facts show:

(1) That the said Ferguson is an announced candidate for nomination by the Democratic Party for the office of Governor at such coming primary, and has duly filed with the State Chairman of the Executive committee his written request, in manner and form as required by law, to have his name appear on the official ballot of that Party at said primary election, as a candidate for its nomination for Governor.

(2) That on September 25th, 1917, the Senate of Texas, sitting as a court of impeachment for the trial of certain charges preferred by the House of Representatives, by its judgment of that date, decreed that he be removed from the office of Governor and thereafter "be disqualified to hold any office of honor, trust or profit under the State of Texas."

The plaintiff alleged that said judgment is valid, subsisting, and makes the said Ferguson ineligible to hold the office of Governor if he should be nominated and elected thereto.

The defendant Ferguson, after admitting his candidacy and his efforts and purpose to get his name placed upon the Democratic ticket, answered denying his alleged ineligibility, and averring that said judgment was and is void, and ineffectual to disqualify him, for these reasons:

(a) Said judgment was rendered September 25th, 1917, at a time when he was not Governor, and not subject to the jurisdiction of the Senate sitting as a court of impeachment, because, although he had theretofore held the office of Governor, he, nevertheless, had resigned his said office on September 24th, 1917, and said judgment was rendered after his resignation, and after the Lieutenant Governor had succeeded to and was performing the duties of the office.

(b) Said judgment and impeachment proceedings constituted a quasi-criminal action, in which it was attempted to inflict on him certain punishment for offenses alleged to have been committed by him, and, by the terms of said judgment, he was convicted of and punished for offenses not defined by the Constitution and laws of this State; that neither the Constitution not any act of the Legislature had defined the offenses for which such punishment could be

inflicted upon him, and that the effort of the Senate to punish him for the offenses alleged was violative of the Constitution and of Article III of the Penal Code, as well as the general public policy of this State.

(c) That portion of the judgment which attempted to impose on him the penalty of disqualification to hold office as a punishment for acts alleged to have been committed by him, was violative of the Constitution, and especially of Section 16 of Article I, because such punishment had not been affixed by the Constitution or any existing law, as a penalty for such alleged acts.

(d) The articles of impeachment were filed by the House during a called session of the Legislature, and the Senate thereupon resolved itself into a court of impeachment, and proceeded with the trial of the charges, until the end of the called session, which expired August 29th, 1917, when the Legislature adjourned without disposition having been made of said charges, or of the trial of the defendant thereon, which trial was then in progress, and which was concluded during another called session, convened on August 31st, 1917; that the action of the Senate in rendering judgment in pursuance of proceedings initiated at the previous session was void.

(e) The judgment was rendered upon charges adopted by the House and filed with the Senate, and the trial was had at a special session of the Legislature, convened by proclamation of the Governor, which proclamation did not designate or authorize such action, in violation of Section 40, Article III of the Constitution.

The defendant Ferguson prayed that the injunction sought by the plaintiff be denied, and that the Committee be enjoined from refusing to certify his name as a candidate for Governor at the coming primary election.

The other defendants, the members of the Executive Committee, answered declining to predict what action they would take on the application of the defendant Ferguson to have his name placed on the ticket, and averring that they would discharge their duty as members of the Committee when they should meet to consider that matter, as they might determine at that time.

The trial court, after hearing evidence, granted the relief prayed by the plaintiff, and denied the relief prayed by the defendant Ferguson; from which judgment the latter appealed, making the plaintiff, Maddox, and the members of the Executive Committee, appellees.

It was shown that the Second Called Session of the 35th Legislature convened on August 1st, 1917, and adjourned sine die, August 30th 1917; and that the Third Called Session convened August 31st, 1917, and adjourned sine die September 29th, 1917. Certified copy of the judgment of the Senate, sitting as a court of impeachment, decree-

ing the removal of the appellant Ferguson from the governorship, and his disqualification to hold any office of honor, trust or profit under the State of Texas, was introduced; and these additional facts were proved:

(1) The impeachment charges were presented by the House of Representatives to the Senate and trial thereon by the latter was begun during the second called session of the 35th Legislature, but the trial was not completed nor the judgment of the Senate rendered until near the end of the third called session of that Legislature;

(2) The written resignation of appellant as Governor, the terms of which specified that it was to take effect immediately, was filed in the office of the Secretary of State on September 24, 1917, while the judgment of impeachment and ouster was rendered on the next day, September 25, 1917.

(3) That the 35th Legislature of Texas convened in its second special session on August 1, 1917, in obedience to proclamation of James E. Ferguson, then Governor of Texas, calling it in special session "for the purpose of considering and making additional appropriation for the support and maintenance of the State University for the two fiscal years beginning September 1, 1919".

(4) On August 29, 1917, W. P. Hobby, acting Governor of the State of Texas, called the third special session of the 35th Legislature of the State of Texas to convene at 10:00 o'clock A. M. on August 31, 1917, for a number of purposes specified in his proclamation calling such special session, the same being Nos. 1 to 6, both inclusive, No. 5 thereof reading as follows:

"To facilitate a fair and impartial trial of the Articles of impeachment preferred by the House of Representatives against the Governor of Texas".

The questions certified will be set out at length as they are considered. In logical order, question No. 4 should be considered first. It is as follows:

"4—Is the judgment of impeachment void because the charges on which it rests were adopted and filed by the House of Representatives in the Senate and the trial of appellant in accordance therewith was entered upon by the latter body at a special session of the Legislature convened by a proclamation of the Governor, which did not designate or specify such action as a purpose for which it was called, pursuant to Section 40, Article 3, of the Constitution?"

Under the Constitution the powers of government are divided into three departments,— legislative, executive and judicial, "and no person or collection of persons, being of one of these departments shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted". Art. II, Sec. 1. The legislative power of the State "shall be vested in a Senate and

House of Representatives, which together shall be styled 'the Legislature of the State of Texas.'" Art. III, Sec. 1. "The enacting clause of all laws shall be: 'Be it enacted by the Legislature of the State of Texas.'" Art. III, Sec. 29. "The Legislature shall meet every two years at such time as may be provided by law, and at other times when convened by the Governor." Art. III, Sec. 5. "The Governor may, on extraordinary occasions, convene the Legislature at the seat of government** . His proclamation therefor shall state specifically the purpose for which the Legislature is convened." Art. IV, Sec. 8. When the Legislature shall be convened in special session, there shall be no legislation upon subjects other than those designated in the proclamation of the Governor calling such session, or presented to them by the Governor, and no such session shall be of longer duration than thirty days." Art. III, Sec. 40.

Article XV of the Constitution relates to impeachment. "The power of impeachment shall be vested in the House of Representatives". Art. XV, Sec. 1. "Impeachment of the Governor, Lieutenant Governor, Attorney General, Treasurer, Commissioner of the General Land office, Controller, and the Judges of the Supreme Court, Courts of Appeal and District Courts, shall be tried by the Senate." Art. XV. Sec. 2. "When the Senate is sitting as a court of impeachment, the senators shall be on oath, or affirmation, impartially to try the party impeached, and no person shall be convicted without the concurrence of two-thirds of the senators present." Art. XV, Sec. 3. "Judgment in cases of impeachment shall extend only to removal from office and disqualification from holding any office of honor, trust or profit under this State. A party convicted on impeachment shall also be subject to indictment, trial and punishment, according to law." Art. XV, Sec. 4. "All officers against whom articles of impeachment may be preferred shall be suspended from the exercise of the duties of their office during the pendency of such impeachment. The Governor may make a provisional appointment to fill the vacancy occasioned by the suspension of an officer until the decision on the impeachment." Art. XV. Sec. 5. "The Legislature shall provide by law for the trial and removal from office of all officers of this State, the modes for which have not been provided in this Constitution." Art. XV, Sec. 7.

From this review it is seen that the Constitution creates a House of Representatives and a Senate, each separate and distinct from the other; that these two bodies, or houses together constitute "the Legislature", and that upon this Legislature is conferred all legislative power.

But the sole function of the House and Senate is not to compose "the Legislature", and to act together in the making of laws. Each, in the plainest language, is given separate plenary power and juris-

diction in relation to matters of impeachment,— the House the power to "impeach", that is, to prefer charges, the Senate the power to "try" those charges. These powers are essentially judicial in their nature. Their proper exercise does not, in the remotest degree, involve any legislative function.

In the matter of impeachment the House acts somewhat in the capacity of a grand jury. It investigates, hears witnesses, and determines whether or not there is sufficient ground to justify the presentment of charges, and if so, it adopts appropriate articles and prefers them before the Senate. In doing these things, the House is not "legislating", nor is it conducting an investigation in order that it may be in better position to legislate. It is investigating facts in order that it may determine whether one of the people's servants has done an official wrong worthy of impeachment under the principles and practices obtaining in such cases, and, if so, to present the matter for trial before the constituted tribunal. All of this is judicial in character.

The same is true of the Senate, except its powers are so clearly judicial as to make argument on the point almost superfluous. "Impeachment", says the Constitution, shall be "tried" by the Senate. During the trial the Senate sits "as a court of impeachment", and at its conclusion renders a "judgment". Obviously, a body authorized to sit as a "court" to "try" charges preferred before it, that is to hear the evidence and declare the law and to render "judgment", possesses judicial power, and in its exercise acts as a court. The Senate sitting in an impeachment trial is just as truly a court as is this court. Its jurisdiction is very limited, but such as it has is of the highest. It is original, exclusive and final. Within the scope of its constitutional authority, no one may gainsay its judgment.

The powers of the House and Senate in relation to impeachment exist at all times. They may exercise these powers during a regular session. No one would question this. Without doubt, they may exercise them during a special session, unless the Constitution itself forbids. It is insisted that such inhibition is contained in Article III, Section 40, which provides that legislation at a special session shall be confined to the subjects mentioned in the proclamation of the Governor convening it. This language is significant and plain. It purposely and wisely imposes no limitation, save as to legislation. As neither House acts in a legislative capacity in matters of impeachment, this section imposes no limitation with relation thereto, and the broad power conferred by Article XV stands without limit or qualification as to the time of its exercise.

We therefore answer question 4 in the negative, and hold that the House had authority to impeach Governor Ferguson and the Senate

to enter upon the trial of the charges at the second called session of the 35th Legislature, though the matter of his impeachment was not mentioned in the proclamation convening it.

Question No. 2 is next in logical order. It is as follows:

''2.—Does the fact that the articles of impeachment were presented by the House of Representatives to and the trial thereof by the Senate was begun at one special session, that is the second called session of the 35th Legislature, while the completion of the trial and the judgment of ouster therein occurred at a subsequent session, towit, the third called session of the same legislature, render such judgment invalid?''

In this connection the record shows that the articles of impeachment were filed in the Senate August 24, 1917, during the Second Called Session of the 35th Legislature, which expired August 30th. On August 29th the acting Governor issued his proclamation convening the Third Called Session August 31st. On August 30th the Senate resolved itself into a court and was duly sworn, and Governor Ferguson appeared and filed his answer. Thereafter and on the same day it recessed as a court until Monday, September 3rd, at which time the articles of impeachment and the Governor's answer were read and the trial proceeded with.

From the inception to the conclusion of impeachment proceedings the House and Senate, as to that matter, are not limited or restricted by legislative sessions. As has been shown their constitutional powers with regard to impeachment are not legislative and are not affected by Art. III, Sec. 40. Each House is empowered by the Constitution to exercise certain functions with reference to the subject matter; and as they have not been limited as to time or restricted to one or more legislative sessions, they must necessarily proceed in the exercise of their powers without regard thereto. At the end of a legislative session the House does not cease to exist, and its power, so far as its proper participation in a pending impeachment proceeding is concerned, is not affected, or the effect of what it has already properly done impaired. When the House presented the impeachment charges to the Senate, a major part of its constitutional duty was done, though, in accordance with established parliamentary practice it must still, through its managers, in the role of prosecutor, conduct the trial in the Senate. But the expiration of the legislative session before the indictment preferred by it could be fully tried, did not impair the effect of the indictment or make it necessary for the House to preceed anew and return another. The Constitution does not require this. It is not a reasonable implication from any of its provisions, and to so hold would be illogical and contrary to pertinent precedents and analogies. Articles of impeachment, when preferred by the House, stand for trial before the Senate as a con-

stitutional court, created and organized for such purpose, and whether that trial is concluded at the then legislative session or at some subsequent one, is wholly immaterial.

And the same reasoning applies to the Senate. When the House prefers charges, the Senate, under the mandate of the Constitution, resolves itself into a court for the trial of the charges, and it may and must continue this trial until the matter is disposed of by final judgment. Like the House, it does not cease to exist at the expiration of the legislative session. It is a court and continues such regardless of legislative sessions. The fact that the impeachment trial may extend from one legislative session into another and cover parts of both, is not material. The Constitution creates the court, it does not prescribe for it any particular tenure, or limit the time of its existence. By indubitable reason and logic it must have power and authority to sit until the full and complete accomplishment of the purpose for which it was created, limited, perhaps, by the tenure of office of the persons composing it.

We therefore answer question 2 in the negative, and hold that an impeachment proceeding, begun at one session of the Legislature, may be lawfully concluded at a subsequent one.

The third question submitted is as follows:

"3.—Is such judgment invalid and void because of the fact that at the time it was rendered neither the Constitution nor any statute of this state either defined or designated, within the purview and meaning of Article 3 of Title 1 of our Penal Code, the specific acts and conduct for which an individual could be removed from office and disqualified from thereafter holding any office of honor, trust or profit under the State of Texas; in other words, there being in Texas no such constitutional or statutory definition or designation, does the Senate's decree in this instance visit upon appellant such a punishment as this Penal Statute declares cannot be done, unless the act or omission upon which it is based 'is made a penal offense, and a penalty is affixed thereto by the written law of this State' ''

While impeachable offenses are not defined in the Constitution, they are very clearly designated or pointed out by the term "impeachment" which at once connotes the offenses to be considered and the procedure for the trial thereof.

"Impeachment", at the time of the adoption of the Constitution, was an established and well understood procedure in English and American parliamentary law, and it had been resorted to from time to time in the former country for perhaps five hundred years. It was designed, primarily, to reach those in high places guilty of official delinquencies or maladministration. It was settled that the wrongs justifying impeachment need not be statutory offenses or common-law offenses, or even offenses against any positive law.

Generally speaking, they are designated as high crimes and mis-
demeanors; which, in effect, meant nothing more than grave official
wrongs.

In the nature of things, these offenses cannot be defined, except
in the most general way. A definition can, at best, do little more
than state the principle upon which the offense rests. Consequently,
no attempt was usually made to define impeachable offenses, and the
futility as well as the unwisdom of attempting to do so has been
commented upon.

In the Constitution of the United States impeachable offenses are
designated as "treason, bribery or other high crimes and mis-
demeanors". Const. U. S. Art. 2, Sec. 4. Substantially the same
language is used in many of the state constitutions. In others
"misdemeanors in office," "maladministration," "oppression in
office", and the like are declared to be impeachable offenses.

When the Constitution of Texas was adopted, it was done in the
light of, and with the full knowledge and understanding of the
principles of impeachment as theretofore established in English and
American parliamentary procedure. The Constitution in this matter
of impeachment, created nothing new. By it, something existing and
well understood was simply adopted. The power granted to the
House to "impeach" and the Senate to try "impeachment", carries
with it, by inevitable implication, the power to the one to prefer
and to the other to try charges for such official delinquencies,
wrongs or malfeasances as justified impeachment according to the
principles established by the common law and the practice of the
English Parliament and the Parliamentary bodies in America. The
grant of the general power of "impeachment" properly and
sufficiently indicates the causes for its exercise.

It is said this construction of the Constitution confers arbitrary
and unrestrained power on the Senate. Not so at all. There is no
such thing under our government as arbitrary power. As has often
been said, it is a government of laws, and not a government of men.
We most emphatically repudiate the idea that any officer may be
arbitrarily impeached. In the exercise of its exalted jurisdiction,
the Senate must proceed according to law. It must ascertain the
law by an examination of the Constitution, legal treatises, the com-
mon law and parliamentary precedents, and therefrom determine
the nature, elements and characteristics of impeachable offenses,
and, in the light of reason, apply the principles so worked out to the
facts of the case before it. This is not arbitrary power. It is the
exercise of judicial authority under the Constitution. There is a
vast difference between arbitrary power and final authority. This
Court, in most cases, has final authority, but it has, and can exercise,
no arbitrary power. So the Senate, sitting as a court of impeach-

ment, has, and, in the nature of things, should have final authority, but it too is wholly lacking in arbitrary power.

There is no conflict between Article 3 of the Penal Code and the sections of Article XV of the Constitution relating to impeachment. They relate to different matters and operate in entirely different spheres. "The purposes of an impeachment lie wholly beyond the penalties of the statute or the customary law." The Constitution, in relation to impeachment, has in mind the protection of the people from official delinquencies or malfeasances. The Penal Code, on the other hand, has in mind an offender merely as a menber of society who should be punished for his individual wrong-doing. The primary purpose of an impeachment is to protect the State, not to punish the offender. True, he suffers, as he may lose his office and be disqualified from holding another; but these are only incidents of a remedy necessary for the public protection. There is no warrant for the contention that there is no such thing as impeachment in Texas because of the absence of a statutory definition of impeachable offenses.

We therefore answer question 3 in the negative, and hold that the Constitution sufficiently indicates what offenses are impeachable, and that Article 3 of the Penal Code is without application in the premises.

The fifth question is as follows:

"5. Is that portion of such judgment decreeing that 'the said James E. Ferguson be disqualified to hold any office of honor, trust or profit under the State of Texas' invalid because of the fact that the statutes existing at that time carrying into effect Article 15, Sections 1, 2, 3, and 4 of the Constitution, that is Chapter 1 of Title 98, Vernon's Sayles Statutes of 1914, failed to denounce such a punishment against or visit such a penalty upon an individual as a result of his impeachment?"

What has been said answers this question. The Constitution, in the matter of impeachment of the officers mentioned in Section 2 of Article XV, is clearly self-executing. It needs no aid from the Legislature. The Senate is plainly authorized by Section 4, of Article XV to pronounce "judgment" that the impeached official shall be disqualified from holding office under this State. It is not believed that Chapter 1 of Title 98 of the Revised Statutes has relation to this matter, or was intended to affect this right. But if so, it is plainly void. Obviously, the Legislature may not deprive the Senate of the power to enter such judgment as the Constitution authorizes.

We therefore answer question 5 in the negative, and hold it is immaterial that Chapter 1, of Title 98 of the Revised Statutes does

not provide that impeachment shall constitute disqualification to hold office.

The last question certified is No. 1, which is as follows:

"1.—Is the judgment of impeachment so rendered on September 25, 1917, void as a result of the fact that the written resignation of James E. Ferguson as Governor, 'same to take effect immediately', was filed in the office of the Secretary of State on September 24, 1917?"

The record shows that Governor Ferguson appeared before the bar of the House and answered the charges preferred against him, and participated in the trial thereof until the vote was taken and he was found guilty. Thereafter, and before the Senate, in due course of orderly procedure, could pronounce its judgment, he filed his resignation with the Secretary of State.

On no admissible theory could this resignation impair the jurisdiction or power of the Court to render judgment. The subject matter was within its jurisdiction. It had jurisdiction of the person of the Governor,—it had heard the evidence and declared him guilty. Its power to conclude the proceedings and enter judgment was not dependent upon the will or act of the Governor. Otherwise, a solemn trial before a high tribunal would be turned into a farce. If the Senate only had power to remove from office, it might be said, with some show of reason, that it should not have proceeded further when the Governor, by anticipation performed, as it were, its impending judgment. But under the Constitution the Senate may not only remove the offending official,— it may disqualify him from holding further office, and with relation to this latter matter, his resignation is wholly immaterial. For their protection the people should have the right to remove from public office an unfaithful official. It is equally necessary for their protection that the offender should be denied an opportunity to sin against them a second time. The purpose of the constitutional provision may not be thwarted by an eleventh hour resignation.

We therefore answer the first question in the negative, and hold that the resignation of Governor Ferguson in no manner impaired the power or jurisdiction of the Senate to render judgment disqualifying him from holding any office under this State.

Extended reference to authorities is not practicable or necessary. The following, among others, have been consulted and generally support the conclusions reached. Wooddeson's Lectures, Vol. 2, p. 596, et seq. being "Lecture XL, of parliamentary Impeachments,"; Rawle on the Constitution, Chapter XXII "of Impeachments"; Pomerey's Constitutional Law, Secs. 715, et seq.; Law & Practice of Legislative Assemblies. by Cushing, Part Ninth, Impeachment, pages 979, et seq.; Story on the Constitution, Vol. 1 secs. 788-812;

Foster on the Constitution. Vol. 1, Chapter XIII, and especially section 93, pp. 581 et seq.; American & English Ency. Law, vol. 15, pp. 1064-1071; People v. Hayes, 82 Misc. Rep., 165, 143 N. Y. Supp., 325.; "The Impeachment of the Federal Judiciary." 26 Harvard Law Review, pp. 687-692; "The Law of Impeachment," 6 American Law Register, p. 641; In the Matter of Executive Communication, 14 Fla. 289; State v. Hastings, 37 Neb., 96, 55 N. W., 774.

This opinion should not be concluded without a statement as to the status under our organic law of the judgment of the Senate, sitting as a court of impeachment. It is unquestionably true that such judgment cannot be called in question in any tribunal whatsoever, except for lack of jurisdiction or excess of constitutional power. For instance, an attempt by the Senate to try an officer who had not been impeached by the House, or to pronounce a judgment other than that authorized by Section 3, of Article XV, would be without effect and its action void. The Senate must decide both the law and the facts. It must determine whether or not the articles presented by the House set forth impeachable offenses, and it must determine whether or not these charges are sustained by the evidence produced. Its action with reference to these matters is undoubtedly within its constitutional power and jurisdiction. This is as it should be. The power reposed in the Senate in such case is great, but it must be lodged somewhere, and experience shows there is no better place. The courts, in proper cases, may always inquire whether any department of the government has acted outside of and beyond its constitutional authority. The acts of the Senate, sitting as a court of impeachment, are not exempt from this judicial power, but so long as the Senate acts within its constitutional jurisdiction, its decisions are final. As to impeachment, it is a court of original, exclusive and final jurisdiction.