Geeen, Judge,
delivered the opinion of the court:
The plaintiff, who had been appointed a Judge of a District Court of the United States, brings this suit to recover the salary appurtenant to this office from April 1, 1936, to *294 and including April 30, 1936, in the sum of $833.33 which has not been paid to him. In his petition the plaintiff sets out the commission which he had received appointing him a District Judge signed by the President on February 15, 1929, and alleges that he performed the duties of his office until prevented from so doing by reason of impeachment proceedings against him. The petition shows that in March 1936 the House of Representatives of the United States adopted articles of impeachment against him which were duly presented to the Senate of the United States. The articles of impeachment are also set out and the action taken by the Senate thereon, showing that the plaintiff was adjudged “not guilty” on all of said articles except the seventh; that as to the seventh article the plaintiff had moved to dismiss the same on the ground that it constituted an accumulation and combination of all the charges in preceding articles upon which the Senate must first pass; that this motion was overruled by the Court of Impeachment; and that plaintiff answered denying the jurisdiction of the Senate to consider the seventh article, denied the allegations contained therein, and severally denied the allegations of paragraph 3 thereof.
The petition further shows that the United States Senate, after having acquitted the plaintiff on the first six articles of impeachment, proceeded to try him on the seventh article and found him guilty of the charge contained therein, and that thereafter a judgment was entered by the Senate ordering that the plaintiff be removed from his office as judge of a United States District Court.
It is further alleged in the petition that the attempted and purported removal of plaintiff from the office of Judge of the United States District Court by the Senate of the United States sitting as high Court of Impeachment was illegal, unconstitutional, and void, and did not constitute a removal from such office or deprive him of the emoluments thereof, for the reason that the charges made in the articles of impeachment do not constitute a high crime or misdemeanor within the meaning of the Constitution; that the seventh article of impeachment upon which the plaintiff was found guilty was but a restatement of portions of prior *295 articles as to which plaintiff was adjudged “not guilty”; that the Senate had no jurisdiction to try the plaintiff upon any of the articles of impeachment; and that after it had found the plaintiff “not guilty” on the first six articles, it had no jurisdiction to try the plaintiff upon the seventh article, which charged only matters which were contained in the prior articles.
For the reasons stated above, the plaintiff alleges that the judgment and conviction rendered against him by the Senate was an unconstitutional exercise of authority and is utterly void and of no effect.
The defendant in its special answer and plea states that at the time the petition was filed there was due and owing to the plaintiff the sum of $472.22 as salary for the first seventeen days of the month of April, and that subsequently there was tendered to the plaintiff a check in the amount of $472.22 drawn upon the Treasurer of the United States, and that defendant has at all times been ready and willing to pay this amount to plaintiff.
Further answering, the defendant submits that this court has no jurisdiction either to review or pass upon a judgment of impeachment rendered by the Senate of the United States which is the sole court for the determination of such a case; nor has it jurisdiction to entertain an action to try title to office.
In stating the issues in the case, we have not set out the articles of impeachment containing the charges made against the plaintiff, nor have we referred to the testimony introduced in support of them, for the reason that in the view which we take of the case it is not necessary to consider either of these matters.
It will be observed that the plaintiff bases his claim that the Senate acted without jurisdiction on two allegations: first, that the charges made in the articles of impeachment did not constitute impeachable offenses under the Constitution ; and second, that having been acquitted on the first six articles, the Senate had no jurisdiction to try him under the seventh article which merely restated the matters charged in the previous articles. But this is not the question first to be determined in the case. Before we consider whether *296 the Senate acted within its jurisdiction in its proceedings, we must first decide whether this court has jurisdiction to review the action of the Senate and pass on this matter.
We think that when the provision that the Senate should have “the sole power to try all impeachments” was inserted in the Constitution, the word “sole” was used with a definite meaning and with the intention that no other tribunal should have any jurisdiction of the cases tried under the provisions with reference to impeachment. [Italics ours.] The dictionary definition of the word “sole” is “being or acting without another” and we think it was intended that the Senate should act without any other tribunal having anything to do with the case. This would be the ordinary signification of the words and this construction is supported by a consideration of the proceedings of the Constitutional Convention and the uniform opinion of the authorities which have considered this matter.
It is not contended there is any provision in the Constitution which authorizes a review of the proceedings had and judgment rendered by the Senate in impeachment cases, but it is said the Senate acts as a high court of impeachment and that, being for the purposes of impeachment trials a court, if it acts without constitutional authority its judgments are a nullity. But what court is authorized to review its judgments and set them aside? The writers on constitutional law are unanimous in holding that there is none. Mr. Black, in his work on constitutional law, 3d Edition, pp. 137-138, after considering the proceedings on impeachment trials and the judgment rendered by the Senate, states:
* * * there is no other power which can review or reverse their decision.
Professor Dwight in an article entitled “Trial by Impeachment”, 15 American Law Begister, 257-258, says, after commenting on the fact that in ordinary judicial proceedings we have courts rising one above another and a wide opportunity is given for rectification of mistakes of judgment:
But in the grave questions decided on an impeachment, a single tribunal disposes of the question absolutely and for all time.
*297 In an article appearing in 15 American Law Register 641, Judge Lawrence discusses at length, the power of the Senate in impeachment cases and says (p. 660):
But other high crimes and misdemeanors are just as fully comprehended as though each were specified. The Senate is made the sole judge of what they are. There is no revising court.
While the question now being considered has never been presented to a Federal Court in relation to the impeachment of a Federal officer, there are several decisions of the State courts relating to the finality of judgments rendered upon impeachment trials under constitutional provisions similar to those contained in the Constitution of the United States.
In State v. Chambers, 220 Pac. 890, in passing upon an incidental question arising in the impeachment trial of Governor J. C. Walton of that State, the Supreme Court of Oklahoma held that the legislature had exclusive jurisdiction over matters of impeachment.
The Supreme Court of Texas in two cases has held that the courts have no right to review collaterally a judgment of impeachment, and while in its opinion in the first case, Ferguson v. Maddox, 263 S. W. 888, 893, the language used is not entirely harmonious, its conclusion was:
As to impeachment, it is a court of original, exclusive, and final jurisdiction.
The same rule was laid down in Ferguson v. Wilcox, 28 S. W. (2d), 526, 533.
In People v. Hayes, 143 N. Y. Supp. 325, 328, it appeared that a Governor who had been impeached had issued a pardon to an inmate of a State penitentiary. The validity of the pardon being disputed, a habeas corpus action was instituted on behalf of this inmate. In passing upon the validity of the impeachment, the court said with respect to the legislature:
It is the exclusive and final judge of the occasion or time it shall select to impeach, and of the acts of the Governor it may specify for impeachment. This great power is political. History is replete with illustra *298 tions of its use and abuses. It is reserved to the state for its preservation and the destruction of its enemies, and is beyond the control of every court except the court empowered to try the impeached and find him guilty or innocent.
Without considering at this point whether this statement is in all respects correct, it is clear that it is authority for the conclusion that no court can review the impeachment proceedings and set them aside.
When we consider the matter now before the court from a historical point of view it is quite evident that there was no thought at the time the constitutional provisions for impeachment were adopted of making the proceedings subject to review by the courts. In the constitutional convention it was proposed by several members that impeachments should be tried by a special court consisting of a judge or judges. Madison preferred the Supreme Court. But these propositions were rejected and while there was some suggestion iu the consideration of the matter that the Senate might abuse its power, there was no intimation by anyone that the impeachment proceedings might be reviewed or set aside by the courts.[1]
The first impeachment proceedings were had not long after the Constitution had been adopted in Jefferson’s Administration. John Pickering was a Federal District Judge whom historians say at times appeared on the bench in an intoxicated condition and indulged in language incoherent, irrational, and profane, and the proceedings carried on by him were extremely irregular. The House of Representatives voted articles of impeachment against him and the Senate proceeded to try the case. The Judge did not appear either in person or by counsel, but his son presented a petition alleging that when the acts charged against the Judge were committed he was insane and had been insane for two years and was now physically unable to attend the court. The - Senate heard the evidence on insanity but nevertheless proceeded to try the Judge on the impeachment charges. He was found guilty and removed from office, notwithstanding *299 the fact that there was a provision in the law at the time for filling the place of a Judge unable to attend to his duties and, acting under this provision, the Circuit Court had in 1801 assigned one of its members temporarily to fill his place. After his conviction Pickering was adjudged insane by proper authority. The action of the Senate was characterized by the historian McMaster as “arbitrary”, “illegal”, and “infamous.” We need not consider whether this language was justified. It is sufficient to say that notwithstanding the peculiar circumstances of the case no one at that time or since has suggested that the conviction of Judge Pickering might have been reviewed by the courts.,
Judge Story in his work on the Constitution analyzes at great length the provisions with reference to impeachment and considers the objections made to the Senate as the trial body in such proceedings in preference to the courts. But while recognizing that the Senate might err or even abuse its power, he does not suggest that there would be any remedy.
If the impeachment proceedings were reyiewable by the courts, a conviction would bring such serious results to the accused that in nearly every case where it so resulted the case would be carried to the superior tribunal. It has already been observed that in People v. Hayes, supra, the New York court referring to impeachment proceedings said:
This great power is political. History is replete with illustrations of its use and abuses.
While the Senate in one sense acts as a court on the trial of an impeachment, it is essentially a political body and in its actions is influenced by the views of its members on the public welfare. The courts, on the other hand, are expected to render their decisions according to the law regardless of the consequences. This must have been realized by the members of the Constitutional Convention and in rejecting proposals to have impeachments tried by a court composed of regularly appointed judges we think it avoided the possibility of unseemly conflicts between a political body such as the Senate and the judicial tribunals which might determine the case on different principles.
*300 In the case of State of Mississippi v. Johnson, 4 Wall. 475, 501, the Chief Justice said with reference to a hypothetical case where the House of Representatives had impeached the President and an injunction was sought to restrain the Senate from sitting as a court of impeachment—
Would the strange spectacle be offered to the public world of the attempt by this court to arrest proceedings in that court?
implying that the Supreme Court would take no such action even though it Avas claimed that the Senate was acting unconstitutionally.
Our conclusion is that Ave have no authority to review the impeachment proceedings held in the Senate and decide Avhether the accusations made against the plaintiff Avere such that he could properly be impeached thereon, nor can AA;e pass upon the question of whether his acquittal on the first six articles was a bar to prosecution under the seventh.
In our opinion, the Senate was the sole tribunal that could take jurisdiction of the articles of impeachment presented to that body against the plaintiff and its decision is final.
Plaintiff’s petition must be dismissed and it is so ordered.
Witalet, Judge; Williams, Judge; Littleton, Judge; and Booth, Chief Justice, concur.

 See The Growth of the Constitution in the Federal Convention of 1181 by William M. Meigs.