**Walter L. NIXON, Jr., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 89–3154–LFO.**

United States District Court, District of Columbia.

Aug. 10, 1990.

See also, 881 F.2d 1305.

David Overlock Stewart, Peter M. Brody, Ropes & Gray, Washington, D.C., Boyce Holleman, Michael B. Holleman, Boyce Holleman, P.A., Gulfport, Miss., for plaintiff.

Stuart M. Gerson, Asst. Atty. Gen., Brook Hedge, Branch Director, Tracy L. Merritt, Atty., Dept. of Justice, Civ. Div., Washington, D.C., for defendant.

Michael Davidson, Senate Legal Counsel, Ken U. Benjamin, Jr., Deputy SLC, Morgan J. Frankel, Claire M. Sylvia, Assts. SLC, Washington, D.C., for U.S. Senate, amicus curiae.

## MEMORANDUM

OBERDORFER, District Judge.

Walter L. Nixon, Jr., was a United States District Judge for the Southern District of

Mississippi until removed from office on November 3, 1989, as a result of a conviction by the United States Senate on two of three Articles of Impeachment previously adopted by the House of Representatives. The impeachment derived from Nixon's 1986 conviction on two counts of making false statements to a Grand Jury with respect to an investigation of charges that he had accepted gratuities and interfered with prosecution on drug charges of the son of a business associate.

Nixon sues the United States, James A. Baker III, Secretary of the State, and Ralph Mecham, Director of the Administrative Office of the United States Courts for a declaration that the conviction voted by the Senate on the impeachment charges is void. His theory on the merits derives from the terms of the U.S. Const. Art. I, § 2, cl. 5 which vests in the Senate "the sole Power to try all Impeachments." He contends that this language requires the Senate as a body to "try" an impeachment on the floor of the Senate so that all Senators can, if present, see the witnesses, hear their testimony, and thereby effectively appraise their credibility. He complains that in this case, despite his requests for trial before the "full" Senate, the Senate, as such, did not see witnesses and hear their testimony. Instead, operating pursuant to Rule XI, Rules of Procedure and Practice in the Senate When Sitting on Impeachment Trials, adopted in 1936 but employed for the first time in 1986 and 1989 for the impeachment trials of Judges Harry Claiborne and Alcee Hastings, the Senate appointed a committee of twelve Senators. Only the committee members viewed the evidence and took the testimony of witnesses. Therefore, plaintiff claims, in essence, that Rule XI and his conviction violate the literal requirement of Article I that only "the Senate" is authorized to "try" an impeachment and take testimony of witnesses.

### I.

Rule XI provides in relevant part:

That in the trial of any impeachment the Presiding Officer of the Senate, upon the order of the Senate, shall appoint a committee of twelve Senators to receive evidence and take testimony....

... The committee so appointed shall report to the Senate in writing a certified copy of the transcript of the proceedings and testimony had and given before such committee, and such report shall be received by the Senate and the evidence so received and the testimony so taken shall be considered to all intents and purposes ... as having been received and taken before the Senate....

A Senate Resolution, adopted pursuant to Rule XI, appointed a Committee of twelve Senators to hold an evidentiary hearing, to submit to the Senate "a certified copy of the transcript of the proceedings before the committee and testimony had and given before it," and to "report to the Senate a statement of facts and a summary ... of evidence that the parties have introduced on the contested issues of fact."

The committee took testimony over four days. The House managers called four witnesses. Six witnesses, including the plaintiff, testified in his defense. The hearings were broadcast live to all Senate offices and videotaped for future reference by Senators. The record is silent as to how many Senators took advantage of these opportunities to view the committee proceedings. The committee was not authorized to, and did not, vote on guilt or innocence and made no recommendation. Its report, filed on October 16, 1989, did however note that:

Many specific details—including some that are very important—about each of these conversations are disputed by the parties. Indeed, the committee received dramatically inconsistent testimony concerning the substance, date, and result of these conversations from the participants in the conversations themselves—Judge Nixon, Wiley Fairchild, and Bud Holmes—as well as from a fourth witness,.... Familiarity with these witnesses' various, and divergent, testimony concerning these three conversations is critical to obtaining an understanding of the parties' respective positions....

Report of the Impeachment Trial Committee on the Articles Against Judge Walter L. Nixon, Jr., S.Doc.No. 164, 101st Cong., 1st Sess., at 18–19 (1989).

During the course of the proceedings, plaintiff filed a motion before the committee for a trial before the full Senate based on the provision of Rule XI that:

[N]othing herein shall prevent the Senate from sending for any witness and hearing his testimony in open Senate....

The committee denied that motion on July 25, 1989. Following the filing of the Committee's Report on October 16, 1989, plaintiff filed a brief in the full Senate on October 24, 1989 which included a footnote renewing the motion for a trial before the open Senate. The note and a significant portion of the brief emphasized the importance of credibility issues to the case; the brief further asserted that the omission from the Report of several passages of plaintiff's own testimony was misleading and inaccurate. In any event, no witnesses appeared before the full Senate hearing. However, plaintiff himself made part of the oral argument on his own behalf. Before the Senate voted on the merits of the impeachment, it voted 90 to 7 to deny plaintiff's renewed motion for a trial before the Senate.

Meanwhile, in June 1989, plaintiff intervened in an action brought by Judge Hastings before Judge Gerhard Gesell of this Court. Judge Hastings had been the defendant in a criminal trial which ended in his acquittal. He was nevertheless the subject of impeachment proceedings in which only a Rule XI Committee of the Senate heard testimony. Judge Hastings' case in this Court raised, among other things, the constitutional issue pressed by plaintiff here that he was entitled to an evidentiary hearing before the Senate. On July 5, 1989, Judge Gesell dismissed plaintiff's claim on the ground generally that the Senate's decision to proceed as it did was within its unreviewable prerogative in the absence of some clear constitutional violation. *Hastings v. United States Senate,* 716 F.Supp. 38 (D.D.C.1989). On October 18, 1989, the Court of Appeals affirmed the dismissal on the ground that the plain-

tiff's challenge to the Senate proceedings was premature. *Hastings v. United States Senate,* 887 F.2d 332 (D.C.Cir.1989).

## II.

Plaintiff argues that the procedure used to impeach him was fundamentally unfair. He asserts that the issues in his trial were dependent, indeed turned, on witness credibility, particularly as one of the key witnesses against him recanted earlier testimony in the trial in federal court but recanted the recantation in testimony before the Senate Committee and another key witness, testifying before the Senate Committee, repudiated a prior sworn affidavit and deposition testimony. To demonstrate that he does not rely on a mere technicality but on a functional difference between hearing testimony firsthand and relying on the Committee's Report, plaintiff has submitted tabulations showing that in the final vote before the full Senate a substantially greater percentage of the Committee members voted to acquit him than did Senators who were not Committee members and did not see and hear witnesses. Furthermore, he submits such figures for the impeachment trials of former Judges Claiborne and Hastings, the only other impeachment trials in which the Senate appointed a committee of twelve senators pursuant to Rule XI, that also show a substantially greater percentage of committee members voting to acquit than non-committee members. Plaintiff notes that one of the two counts on which he was convicted and all of the eight counts on which former Judge Hastings was convicted failed to receive a two thirds majority of committee members and thus might not have received such a majority in the full Senate had all of the Senators heard the evidence directly. This showing lends support to plaintiff's claim of unfairness. However, it leaves a difficult question, discussed below, as to whether the unfairness constitutes a constitutional violation cognizable by a federal court under existing precedent.

## III.

### A.

■ This Court has subject matter jurisdiction over this action pursuant to 28

U.S.C. § 1331 because the action " 'will be sustained if the Constitution ... is given one construction and will be defeated if [it is] given another.' " *Powell v. McCormack*, 395 U.S. 486, 514, 89 S.Ct. 1944, 1960, 23 L.Ed.2d 491 (1969) (quoting *Bell v. Hood*, 327 U.S. 678, 685, 66 S.Ct. 773, 777, 90 L.Ed. 939 (1946)). The availability of the judicial remedy sought by plaintiff depends, therefore, on whether the controversy here is justiciable.

### B.

Decision on both justiciability and, if reached, the merits of the constitutional arguments turns on the literal, contextual, and historic meaning of the word "try" as it appears in Article II, § 3, cl. 7. Some clues to the meaning of that word appear in the Constitution itself.

Article I, § 2, cl. 5 vests in the House of Representatives "the sole Power of Impeachment." That provision is quite separate and apart from Article I, § 3, cl. 6 which provides in language characteristic of criminal trials in court before a jury that:

The Senate shall have the sole Power to *try* all Impeachments.... When the President of the United States is *tried*, the Chief Justice shall preside: And no Person shall be *convicted* without the Concurrence of two thirds of the Members present.

*Judgment* in *Cases* of Impeachment shall not extend further than to removal from Office, and disqualification to hold and enjoy any Office of honor, Trust or Profit under the United States: but the Party *convicted* shall nevertheless be liable and subject to Indictment, Trial, Judgment and Punishment, according to Law. [Emphasis added.]

Article III, § 2, cl. 3, highly relevant contextually for its juxtaposition of trial by jury and trials in cases of impeachment, provides:

The *Trial of all Crimes, except* in *Cases of Impeachment;* shall be by jury; and such *Trial* shall be held in the State where the said Crimes shall have been committed; but when not committed within any State, the Trial shall be at such Place or Places as the Congress may by Law have directed. [Emphasis added.]

Finally, and significantly, the Seventh Amendment focuses on the words "fact" and "tried" in its provision that:

In Suits at common law ... no *fact tried* by a jury shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law. [Emphasis added.]

There are thus strong contextual indications that if the Framers could speak today, they might well say that they intended impeachments to be tried to the Senate, sitting as a court on questions of law and as jurors on questions of fact.

Moreover, historical sources indicate that the Framers established impeachment by trial in the then 26 person Senate rather than a less numerous and arguably more efficient tribunal in order to make removal substantially difficult. According to *The Federalist No. 65* 436 (A. Hamilton) (P. Ford, ed. 1898), "[t]he hazard [of impeachment in a tribunal insufficiently dignified or independent] could only be avoided, if at all, by rendering that tribunal more numerous than would consist with a reasonable attention to economy." Accordingly, the Framers deliberately chose a numerous body to try impeachments, e.g. the 26 person Senate, instead of the less numerous Supreme Court, because, among other considerations, "the Supreme Court were too few in number." *See* 2 M. Farrand, *The Records of the Federal Convention of 1787*, at 551–53 (Aug. 7, 1787) (rev. ed. 1966). The Framers also rejected the British method of removal of judges "by address," which required only a majority vote in Parliament, in favor of requiring a trial and a two thirds majority out of concern that the British method would inappropriately weaken the independence of judges. *See* 2 *Farrand, supra* at 428–29; Ziskind, *Judicial Tenure in the American Constitution: English and American Precedents,* 1969 S.Ct.Rev. 135, 150–51. These concerns provide evidence of the Framers' determination that the procedure finally

chosen—trial in the Senate with two thirds majority to convict—while more cumbersome than some alternatives, was essential to the preservation of judicial integrity.

Aside from textual and historical indicators, there is in addition a striking analogy between the duty of a federal judge sitting as a trier of fact to expose himself directly to the evidence and the duty of Senators sitting like jurors as triers of fact in an impeachment case. There are significant differences between the consideration given to a matter by triers of fact who confront live witnesses and those who view the testimony second hand in a transcript or from oral or video tape. This difference is reflected in the Seventh Amendment's limitation on trial and appellate court review or re-examination of a "fact tried by a jury." There are also limitations on the authority of a judge sitting as a trier of fact without a jury to refer a complex or unwieldy case to a special master. *See La Buy v. Howes Leather Co.*, 352 U.S. 249, 77 S.Ct. 309, 1 L.Ed.2d 290 (1954). A judge sitting as trier of fact may appoint a special master to take evidence and make recommendations to the court "only upon a showing that some exceptional condition requires it." Fed.R.Civ.P. 53(b). The Supreme Court in *La Buy* rejected considerations such as congestion, complexity, and length of trial time as exceptional conditions permitting appointment of a special master. The Sixth Circuit has similarly found conditions of extraordinary pretrial management and public interest in speedy resolution to be insufficiently exceptional to warrant referral. *In re United States*, 816 F.2d 1083, 1088 (6th Cir.1987). Indeed, courts have noted: "it is difficult to conceive of a reference of a nonjury case that will meet the rigid standards of *La Buy.*" *Liptak v. United States*, 748 F.2d 1254, 1257 (8th Cir.1984) (citing 9 C. Wright & A. Miller, *Federal Practice and Procedure* § 2605 at 791 (1971)); *see also In re Armco, Inc.*, 770 F.2d 103, 105 (8th Cir.1985). *But see In re Department of Defense*, 848 F.2d 232 (D.C. Cir.1988) (upholding appointment of special master to review documents in FOIA case with issues of national security). The same considerations which limit the authority of

courts to re-examine facts tried by a jury and limit a federal judge's authority to refer the taking of evidence and making of recommendations to a special master may apply to the Senate's prerogative to filter through a committee the testimony offered in evidence in an impeachment proceeding.

## C.

■ Despite textual and historical indicators that the word "try" carries with it some duty for Senators to sit as judge and jury, and appealing as plaintiff's functional argument may be, plaintiff has not established the kind of clear violation of a specific constitutional requirement which would trigger judicial authority to review a solemn and serious Senate action. Even though plaintiff's challenge to the constitutionality of Rule XI raises a serious question not yet addressed at the appellate level, it must nonetheless fail because his claim is not justiciable.

The issue on justiciability turns ultimately on the narrow question of whether the Senate's specific denial of this plaintiff's motions for leave to take testimony before the open Senate denied him the kind of trial clearly guaranteed to him by the Constitution. On this issue defendant and *amicus* point with emphasis to the provisions of Article 1, § 3, cl. 6 that the Senate has the *sole* power to try impeachments and of Article I, § 5, cl. 2 that "Each House may determine the Rules of its Proceedings." Decision on the justiciability of this controversy about this particular motion and the denial of it is governed by principles announced by the Supreme Court in *Powell*, and more recently addressed by Judge Gesell in respect to plaintiff and Judge Hastings. *Hastings v. United States Senate, supra.* In the case before the Court in *Powell*, the House had excluded a re-elected Congressman. The Court reviewed and voided the House decision excluding the Congressman because its actions exceeded *explicit* textual limitations on its powers. It was undisputed that the Congressman met the explicit constitutional qualifications established by Article 1, § 2, cl. 2: age, years of citizenship and inhabitancy of the

state represented. The Court drew a line between judicial authority to review a decision excluding a person where possession of one of those qualifications was a matter in dispute and resolved by the House, and where, as in *Powell*, the House excluded a person despite his or her undisputed possession of the specific qualifications. Thus, in *Powell*, the Supreme Court found that the House had attempted "to set qualifications for membership" beyond the several specified in the Constitution. *See Powell v. McCormack*, 395 U.S. at 520, 89 S.Ct. at 1963.

The denial of plaintiff's motion for a hearing before the full Senate plainly diminished the Senate's ability to appraise conflicting testimony and permitted Senators to exercise their authority to try plaintiff differently from the way judges and juries try facts. But the denial was not the kind of constitutional violation that the Supreme Court found to be justiciable in *Powell v. McCormack*. The denial more nearly resembled a procedural ruling pursuant to the Senate's rule making authority created by Article I, § 5, cl. 2, as to the *type* of trial to be accorded this particular plaintiff, the sort of decision the Court of Claims has determined to be committed solely to the Senate. *See Ritter v. United States*, 84 Ct.Cl. 293, 296, *cert. denied*, 300 U.S. 668, 57 S.Ct. 513, 81 L.Ed. 875 (1937); *see also Powell v. McCormack*, 395 U.S. at 521 n. 42, 89 S.Ct. at 1963 n. 42. As Judge Gesell succinctly put it, the impeachment clause of the Constitution simply "does not say that the *full* Senate must try all impeachments." *Hastings v. United States Senate*, 716 F.Supp. at 40 (emphasis in original).

As the Senate as *amicus curiae* persuasively explains here, the instant controversy might be justiciable and plaintiff might be entitled to the relief he seeks if he had not been impeached by the House, were not a civil officer of the United States, or if the Senate had attempted to impose a sanction beyond removal from office and disqualification from holding office in the future. He might well also prevail if he were convicted without any semblance of a trial. However, in light of

the Senate's constitutionally granted rule making power, the authorities now available, and the deference due to the views of respected colleagues, it is difficult to conclude that the Senate's denial of plaintiff's motion for a hearing before the full Senate, while according him an opportunity to present and cross-examine witnesses before the Committee and the opportunity to argue both personally and by counsel before the full Senate, resulted in the dimension of departure from the Constitution's textual commitment to the Senate of the "sole Power to try all Impeachments" as to make this controversy justiciable and the claim meritorious.

In view of the foregoing, an accompanying Order will grant defendants' motion to dismiss this case as nonjusticiable.

### ORDER

For the reasons stated in the accompanying Memorandum, it is this 10th day of August, 1990, hereby

ORDERED: that defendants' Motion to Dismiss should be, and is, hereby GRANTED; and it is further

ORDERED: that plaintiff's Motion for Summary Judgment should be, and is, hereby DENIED.