[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION MOTION TO DISMISS: MANDAMUS
Pursuant to[1] Practice Book § 10-30 through § 10-33, the defendants have filed a motion to dismiss the plaintiff's action sounding in mandamus. The defendants claim that the court lacks jurisdiction over the subject matter in that: (1) the defendants Haley and DeLoatch were acting in their official capacities as Commissioners of the Allingtown Board of Fire Commissioners and should not be subject to the action as individuals; (2) that the court is without authority to grant the relief requested by the plaintiff because the impeachment complained of is both discretionary and legislative in nature, and thus a separation of powers issue exists that the Judiciary and this court have no power to address; (3) the court is prohibited by the Constitutions of Connecticut and the United States from interfering in the discretionary legislative decision to impeach the plaintiff; (4) the plaintiff has failed to exhaust his administrative remedies; (5) the plaintiff's papers are legally defective in that they seek an opinion on the legality of a recall of an elected official where no recall in fact occurred; and (6) the plaintiff's papers are legally defective in that there is no return date on the face of the complaint.
The plaintiff, who was duly elected in July, 1999, to a three year term to the Allingtown District Board of Fire Commissioners in West Haven, Connecticut has filed a writ of mandamus, pursuant to General Statutes § 52-485 seeking to be restored to his elective office for the balance of his elective term which will expire on June 30, 2002. Plaintiff alleges that on June 28, 2001, the defendants Aaron Haley and Calvin DeLoatch, the remaining two members of the Fire Commission illegally convened and conducted an "impeachment hearing" of the plaintiff. Thereafter, on the same evening, June 28, 2001, the two defendants voted affirmatively to impeach the plaintiff and remove the plaintiff as a member of the Allingtown District of Fire Commissioners.
The defendant DeLoatch's term of office as a "fire commissioner"later expired on June 30, 2001. DeLoatch had failed to be elected to an additional three year term in an election held in May, 2001. However, on July 3, 2001, five days after the impeachment and removal of the plaintiff from the "Fire Commission," the defendant Haley selected DeLoatch to fill the vacancy caused by the plaintiff's removal, allowing the defendant DeLoatch to continue serving on the Commission for the unexpired portion of the plaintiff's Sampieri's term. CT Page 9794
The plaintiff seeks relief from the court claiming that he has a right to serve his three year term in office. The plaintiff additionally claims that the "Impeachment Hearing" conducted by the two defendants and their subsequent vote to remove the plaintiff from his elected position of Fire Commissioner were unlawful. Further, that by doing so, the defendants breached a duty to the plaintiff and the voters who elected him, not to abridge the exercise of the plaintiff's rights, powers and privileges as a Fire Commissioner during this three year term of office.
The plaintiff is requesting that the court order that the "Impeachment Hearing" and the defendants' vote of impeachment be declared null and void, and that the plaintiff be restored to his elective position as a Fire Commissioner to serve the remainder of his elective term.
The plaintiff has also filed a second companion action sounding in quo warranto, pursuant to[2] General Statutes § 52-491 through §52-494, challenging the defendant DeLoatch's lawful right to hold the position of Fire Commissioner to serve the unexpired portion of the plaintiff's elective term of office. In that action against defendant DeLoatch and Haley, and the Allingtown District Board of Fire Commissioners, the plaintiff claims that DeLoatch was not lawfully and properly appointed to the Commission by the defendant Haley. Therefore, the plaintiff argues DeLoatch has no right to said office or to exercise the rights, powers and privileges thereof. It is the plaintiff's position that, since July 3, 2001, the defendant DeLoatch has held said position of Fire Commissioner unlawfully and to the exclusion of the plaintiff, despite the fact that it is the plaintiff who retains the lawful right to his office until the expiration of the term of office on June 30, 2002.
The plaintiff demands that the defendant DeLoatch be required to answer to the court by what warrant DeLoatch claims to hold the office of Fire Commissioner and to exercise the right, powers and privileges thereof.
Mandamus is the proper remedy for reinstatement of a public officer who, despite a clear legal right to remain in office, has been wrongfully ousted from that position. Hennessey v. Bridgeport, 213 Conn. 656,569 A.2d 1122 (1990); State ex rel. Comstock v. Hempstead, 83 Conn. 554,556, 78 A. 442 (1910); Thompson v. Troup, 74 Conn. 121, 124, 49 A. 907
(1901); see also Marbury v. Madison, 5 U.S. (1 Cranch) 137, 168-73 (1803). The writ of mandamus is an extraordinary remedy to be applied only under exceptional circumstances, and is not to be extended beyond its well-intentioned limits. Lahiff v. St. Joseph's Total AbstinenceSociety, 76 Conn. 648, 651, 57 A. 692 (1904); McAllister v. Nichols,193 Conn. 168, 171, 474 A.2d 792 (1984). Furthermore, "[m]andamus neither gives nor defines rights which one does not already have. It enforces, it CT Page 9795 commands, performance of a duty. It acts at the instance of one having a complete and immediate legal right; it cannot and it does not act upon a doubtful or a contested right. . ." State ex rel. Comstock v. Hempstead, supra, 561; McAllister v. Nichols, supra, 171-172.
A party seeking a writ mandamus must establish: "(1) that the plaintiff has a clear legal right to the performance of a duty by the defendant; (2) that the defendant has no discretion with respect to the performance of that duty; and (3) that the plaintiff has no adequate remedy at law."Hennessey v. Bridgeport, supra, 659; Vartuli v. Sotire, 192 Conn. 353,365, 472 A.2d 336 (1984); Harlow v. Planning Zoning Commission,194 Conn. 187, 196, 479 A.2d 808 (1984). Satisfaction of this demanding test does not, however, automatically compel issuance of the requested writ of mandamus. Hackett v. New Britain, 2 Conn. App. 225, 229,477 A.2d 148, cert. denied, 194 Conn. 805, 482 A.2d 710 (1984). "In deciding the propriety of a Writ of Mandamus, the trial court exercises discretion rooted in the principles of equity." Hennessey v. Bridgeport, supra, 659; Sullivan v. Morgan, 155 Conn. 630, 635, 236 A.2d 906 (1967).
Actions in quo warranto are governed by General Statute § 52-491. A successful quo warranto action unseats an illegal office holder and declares the position vacant. It does not place the rightful claimant into the office. New Haven Firebird Society v. Board of FireCommissioners, 219 Conn. 432, 436, 593 A.2d 1383 (1991). If the claimant can thereafter establish his clear right to the position, he may bring an action in mandamus to seek his own appointment. Beccia v. Waterbury,185 Conn. 445, 456-57, 441 A.2d 131 (1981).
In a quo warranto proceeding, the title challenged must be to a public office. New Haven Firebird Society v. Board of Fire Commissioners, supra, 436; State ex rel. Stage v. Mackie, 82 Conn. 398, 400, 74 A. 759
(1909). There are two criteria to determine whether a governmental position constitutes a public office within the meaning of the quo warranto statute: (1) It must have its source in a sovereign authority speaking through the constitution or legislation; and (2) its incumbent, by virtue of his incumbency, must be vested with some portion of the sovereign power which he is to exercise for the benefit of the public.State ex rel. Neal v. Brethauer, 83 Conn. 143, 146, 75 A. 705 (1910).
In proceedings in the nature of quo warranto, the object is to test the actual right to the office and not merely a use under color of right.Marsala v. Bridgeport, 15 Conn. App. 323, 328, 544 A.2d 191 (1988); Stateex rel. Southey v. Lashar, 81 Conn. 540, 545, 542 A. 636 (1899). "It is well established that in quo warranto proceedings the burden is upon the defendant to show a complete title to the office in dispute." Marsala v.Bridgeport, supra, 328; State ex rel. Gaski v. Basile, 174 Conn. 36, 38, CT Page 9796381 A.2d 547 (1977); see State ex rel. Barlow v. Kaminsky, 144 Conn. 612,616, 136 A.2d 792 (1957); State ex rel. Wallen v. Hatch, 82 Conn. 122,125, 72 A. 575 (1909); State ex rel. Reiley v. Chatfield, 71 Conn. 104,40 A. 922 (1898); Cheshire v. McKenney, 182 Conn. 253, 256-57; 438 A.2d 88
(1980); see also Beccie v. Waterbury, supra, 456-57.
Pursuant to Connecticut Practice Book § 10-31, a motion to dismiss shall be used to assert (1) lack of jurisdiction over the subject matter; (2) lack of jurisdiction over the person; and (3) improper venue. "A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court."Richardello v. Butka, 45 Conn. Sup. 336 (1997); Gurliacci v. Mayer,218 Conn. 531, 544 (1991). "A motion to dismiss is used to assert jurisdictional flaws that appear on the record or are alleged by the defendant in a supporting affidavit as to facts not apparent on the record." Villager Pond, Inc. v. Darien, 54 Conn. App. 178, 182 (1999);Bradley's Appeal from Probate, 19 Conn. App. 456, 461-62 (1989). "In ruling upon whether a complaint survives a motion to dismiss, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader." Villager Pond, Inc. v. Darien, supra at 183; Mahoney v. Lensink, 213 Conn. 548, 567 (1990). "It is the law in our courts, as it is in the federal courts, that [a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Pamela B. v. Ment, 244 Conn. 296, 309 (1998). "Standing is the legal right to set judicial machinery in motion. . . . If a party is found to lack standing, the court is without subject matter jurisdiction to determine the cause." City of Middletown v. P G Enterprises, Ltd.Part., 45 Conn. Sup. 435, 437 (1998).
 I.
The defendants first claim is that the action against the defendants, Haley and DeLoatch as individuals, should be dismissed, as each defendant, at all times mentioned in the plaintiff's mandamus action, was acting in his official capacity as a Commissioner of the Allingtown Board of Fire Commissioners. The defendants, in their memorandum of law, have not cited any case law or statutory authority to support their position. However, as the defendants have raised the question of immunity, the court in denying this claim will address the issue. General Statutes[3]
§ 4-165 provides statutory immunity for officers and employees of the state against liability for "damage or injury, not wanton, reckless or malicious, caused in the discharge of his duties or within the scope of his employment." The defendants are not state employees or officers as CT Page 9797 defined by § 4-165 and, thus, the statutory immunity provided therein is not available to the defendants. The court, in analyzing this claim, however, looks to the decision in Shay v. Rossi, 253 Conn. 134, ___ A.2d ___ (2000) for guidance. The court, in the Shay decision, looked to the sufficiency of the allegations of the plaintiff's complaint and certain affidavits and numerous documents that had been attached thereto by the parties, to ascertain whether or not the plaintiff could overcome the doctrines of sovereign and statutory immunity. Id. 139. The court stated, "we examine the pleadings to decide if the plaintiff has alleged sufficient facts: (1) with respect to sovereign immunity, to support a conclusion that the defendant acted in excess of his statutory authority; and (2) with respect to personal immunity under § 4-165, to support a conclusion that the defendant was acting outside the scope of his employment or willfully or maliciously. Id. 140, citing [Gurliacciv. Mayer, 218 Conn. 531, 542, 590 A.2d 914 (1991)]; see Barde v. Board ofTrustees, 207 Conn. 59, 64, 539 A.2d 1000 (1998)." Antinerella v. Rioux,229 Conn. 479, 489, 642 A.2d 699 (1994). The court went on to state that it would construe factual allegations contained in the pleadings and affidavits broadly in the plaintiff's favor and presume them to be true for purposes of the motion to dismiss. Id. 141.
With this procedural posture in mind, we turn to those facts which are undisputed for purposes of the motion to dismiss, as disclosed by the allegations of the complaint, affidavits and supporting documents submitted by the parties.
The plaintiff and the two defendants comprised the three member Board of Fire Commissioners for the Allingtown Fire District. The plaintiff was elected by the voters of said district to a three year term in June, 1999. In June, 2000, defendant Haley was also elected for a three year term. The remaining defendant, DeLoatch, was appointed by defendant Haley to fill a vacancy on the Board as a result of the resignation of a former commissioner that became effective July 31, 2000. Defendant DeLoatch's appointment to fill this vacancy was for the unexpired balance of a term which ended on June 30, 2001. Each Commissioner is paid by the Fire District the sum of $1,000 per year during their term on the Board.
On June 6, 2001, during the Fire District's monthly public meeting, the Board, by a 2 to 1 majority, voted to hire Elmer Henderson as the District's Fire Chief. The plaintiff was the dissenting vote, while the two defendants voted in favor of Henderson. This vote came after long and heated private and public debate between the plaintiff and the defendants regarding Henderson's professional qualifications. It is claimed by the defendants that, during private conversations, public forums and newspaper interviews during May, 2001 and June, 2001, that the plaintiff, Sampieri, made remarks regarding race and the gay and lesbian CT Page 9798 community that could be considered and interpreted to be inflammatory, insensitive and racially biased toward Henderson, who is an African-American, the minority members of the community comprising the district, and the gay and lesbian community. It is noted for the purposes of placing the plaintiff's comments in context, that the defendants are of African-American heritage and the plaintiff is a Caucasian. The alleged remark of the plaintiff which has sparked the most controversy occurred on June 6, 2001, when the defendants voted in favor of hiring Henderson. Immediately after this vote, it is alleged that the plaintiff said, "There goes the neighborhood." The defendants and their supporters in the community have interpreted that remark as a racist and discriminatory comment and "a serious breach of ethics."
The plaintiff, in subsequent public comments, continuously denied that his comments were racist and that the dispute was over the qualifications of Henderson to be hired as the Fire Chief. In the New Haven Register, dated May 23, 2001, the plaintiff is quoted as saying: "I'm not doing this because the guy [Henderson] is black." "Haley wants this to be a racial issue; it's not."
Prior to the vote to hire Henderson on June 6, 2001, community activists began calling for the plaintiff's impeachment. Defendant, DeLoatch, is quoted on May 25, 2001 as having said, "I see it is time for a change, and these attitudes, coming from a commissioner [Sampieri], are inappropriate."
On or about June 9, 2001, both defendants were quoted as saying they would sign a petition being circulated by the West Haven Black Coalition calling for Sampieri's ouster from the Board. On or about June 16, 2001, the defendants, constituting a quorum and a majority of the Board's membership, voted to commence impeachment proceedings against the plaintiff. At this June 16, 2001 meeting attended by the two defendants, defendant Haley appointed himself and defendant DeLoatch as a two person "Ethics Commission" to investigate the allegations against the plaintiff regarding alleged racist comments and discrimination attributed to the plaintiff. After reviewing community petitions calling for the plaintiff's removal from the Board; "complaints from the public"; and newspaper articles, the two defendants concluded that "the appropriate action was an impeachment hearing." Acting as the Ethics Commission, they recommended to themselves, as a majority quorum of the Board, that the Board schedule an impeachment hearing. The defendants, thereafter, acting in their capacity as Commissioners of the Fire District, voted to schedule an impeachment hearing for June 28, 2001. According to defendant Haley's sworn affidavit dated July 17, 2001, the purpose of this "impeachment" hearing was to investigate allegations against Sampieri, by members of the District, particularly during the last ten days, and "take CT Page 9799 any appropriate action." A list of charges to which the two defendants, acting in the capacity of Ethics commission, found "probable cause" were "broken down and itemized" for communication to the plaintiff by the District's legal counsel.
Prior to the hearing on June 28, 2001, the defendants broadened and increased the scope of the impeachable offenses against the plaintiff by adding additional charges regarding "financial misdoings", according to statements attributed to the Board's legal counsel. By the time of the "impeachment hearing" on June 28, 2001, the plaintiff had been notified of 13 pending "charges of impeachment" most of which the Board's legal counsel characterized as "violations of state ethics law." Also, by way of a letter from the Board's legal counsel to the plaintiff, dated June 22, 2001, the plaintiff was notified that the impeachment proceeding was justified by General Statutes[4] § 7-148i through § 7-148n, inclusive, and[5] § 1-82 through § 1-84, inclusive. This letter also informs the plaintiff that "[t]he specific Connecticut General Statutes that you have breached reflected in our Impeachment Charge Sheet are as follows:[6] § 46a-59, 1-84, 7-148i and[7] 7-148." It is noted that none of the 13 charges listed on the[8] Impeachment Charge Sheet delivered to the plaintiff for use at the June 28, 2001 hearing carry any reference to a violation of state statutes as they pertain to any or all of the enumerated Impeachment Charges.
The plaintiff, in filing his actions sounding in mandamus and quo warranto, affixed a photocopy of the official transcript of the "impeachment proceedings" held on June 28, 2001 as an exhibit for the court's review and reference.
The transcript reveals that the defendant Haley, as Chairman of the Allingtown District Board of Fire Commissioners, called the meeting to order. Defendant DeLoatch and plaintiff Sampieri, who was represented by private legal counsel, were present. Despite the fact that the plaintiff was a member of said Board and in this official capacity had been previously represented by Attorney Robert E. Arnold, the Board's legal counsel, this same attorney was now present to advise the defendants, who were prosecuting the impeachment charges against the plaintiff.
The Board's attorney then explained the format of the impeachment proceedings and then began to read the list of impeachment charges when objections from the audience and Sampieri's counsel caused the two defendant Commissioners to call a recess of the proceedings. Following the recess, the Board's attorney once again began to read the charges against the plaintiff. To each of these charges, Sampieri's counsel replied that, on his advice, the plaintiff would not reply to any of the charges. CT Page 9800
Following the reading of the charges, plaintiff's counsel requested a cancellation of the hearing, stating that "there is no lawful authority for such a hearing." Plaintiff's counsel then proceeded to inform the defendants that Sampieri was an elected official who had a term of office that would not expire until June 30, 2002, and that Article 9 of the Connecticut Constitution authorizes impeachment only of the Governor and all other executive and judicial officers. Plaintiff's counsel also advised the defendants that the Board had no powers to recall an elected official. Plaintiff's counsel specifically challenged the jurisdiction of the defendants and the Board of Fire District Commissioners to conduct an impeachment hearing of the plaintiff. The defendants refused to cancel the hearing.
Plaintiff's counsel then demanded that the defendants Haley and DeLoatch recuse themselves and disqualify themselves, stating that they were essential fact witnesses and they had already prejudged the issues. Counsel informed the defendants that he was prepared to call the defendants as witnesses when defending Sampieri. Once again, the defendants refused.
Sampieri's counsel then moved to disqualify the Board's legal counsel stating that the plaintiff intended to call him as a fact witness as well. Sampieri's counsel claimed that the Board's attorney had a conflict of interest as he was now advising two members of the Board against a third member of the Board, that being the plaintiff. Defendant Haley's response to these objections was "we are going to move forward," in essence, denying the plaintiff's requests. At that time, the plaintiff and his counsel left the hearing, refusing to recognize the jurisdiction of the Board and the legitimacy of the proceedings.
The hearing then commenced and defendant Haley proceeded to call three witnesses to testify that they overheard the plaintiff utter the phrase "There goes the neighborhood", at the June 6, 2000 meeting of the Board.
A fourth witness stated that she did not hear the comment, but that she was told of it, and that it was a demeaning comment and insulting to the African American community. She also testified that she had read newspaper articles regarding the comment and another comment by the plaintiff regarding the gay and lesbian community. Each witness was administered an oath by the Board's attorney, and all questioning and direct examination of these witnesses was conducted by defendant Haley.
Upon the completion of witness testimony and prior to any deliberations regarding a decision as to "impeachment" or termination of the plaintiff, defendant Haley addressed the members of the audience and made CT Page 9801 the following remarks:
 "The real reason why we are here tonight to have this hearing is because we felt that, as an elected official, someone making these kind of remarks and comments should no longer be an elected official representing this community."
The defendants then called a recess to go into executive session to "discuss the issues." Upon defendant Haley and DeLoatch's return to public session, defendant DeLoatch made a motion to terminate plaintiff Sampieri on violations 1, 6, 8, 9, 10 and 11 of the Impeachment Charge Sheet. Defendant Haley then seconded the motion. Both defendants then voted in favor of "impeaching" the plaintiff based on those enumerated violations. A subsequent vote by the two defendants to terminate the plaintiff as a member of the Board of Fire Commissioners also passed with each defendant voting in favor of the motion.
On June 29, 2001, the defendants sent a "notice and letter" notifying the plaintiff of its decision to "impeach and terminate" the plaintiff from his elected position. On July 3, 2001, the plaintiff attempted to attend the regular monthly meeting of Board and was denied status as a commissioner of said Board. At that meeting, defendant Haley declared that the plaintiff's position was now vacant, and proceeded to appoint the defendant DeLoatch to serve the balance of the plaintiff's unexpired term. As previously mentioned herein, DeLoatch's own term had expired on June 30, 2001, two days after he had voted with defendant Haley against the plaintiff. DeLoatch had been unsuccessful in the May, 2000 election for the Board of Fire Commissioners, in an attempt to win his own three year term. In his sworn affidavit, dated July 17, 2001, defendant DeLoatch states that "I did not consider that I would be asked to serve if Sampieri was terminated from his seat during the impeachment. . . ."
Shay v. Rossi, 253 Conn. 134, ___ A.2d ___ (2000) defined when state employees could be sued by a plaintiff in their individual capacity, though they may have been acting in an official capacity, as well. While General Statutes § 4-165 regarding statutory immunity is not applicable to these defendants as members of the Allingtown District Board of Fire Commissioners, the reasoning of the decision and the principles outlined therein, do apply in this court's opinion. The question for this court is whether the conduct of the defendants Haley and DeLoatch was wanton, reckless or malicious in the discharge of their duties, or was it within the scope of their duties as Commissioners. The totality of the facts recited herein, if proven by the plaintiff, would permit a fact finder to infer that the defendants filed the impeachment charges; held an impeachment hearing; and terminated the plaintiff from his elected CT Page 9802 position knowing that these actions were unjustified and illegal, and continued to proceed against the plaintiff with that knowledge, and possible motives to replace the plaintiff as a Commissioner by appointing DeLoatch to the plaintiff's position. These inferences would be enough, if proven at trial, to establish that the defendants' conduct was sufficiently egregious to constitute conduct that was in excess of their authority. Id. 180. The allegations and supporting facts adduced by documentation, exhibits and testimony submitted to the court are sufficient to establish that the defendants' conduct could be found to be wanton, willful, reckless, intentional and malicious, with the requisite existence of a state of consciousness with reference to the consequence of one's act. Id. 181. "It is such conduct as indicates a reckless disregard of the just rights of others or of the consequence of the action. It is highly unreasonable conduct. Id. 181. The facts submitted, if proven at trial, can be sufficient to establish that the defendants have acted with improper and self-serving motives. The plaintiff, therefore, can proceed against the defendants in their capacities as individuals.
 II
The defendants next argue that this court lacks subject matter jurisdiction because the impeachment hearings conducted by the defendants acting in behalf of the defendant Allingtown Board of Fire Commissioners was both discretionary and legislative in nature. Their position is that the Allingtown Fire District is a duly organized self-taxing and self-governing district, and thus a separation of powers issue exists that the Judiciary has no authority to address. They claim that the Constitution of the State of Connecticut, the United States Constitution and common law jurisdictionally bar the court from interfering in a legislative proceeding.
Article Ninth § 1 of the Constitution of Connecticut provides: "The house of representatives shall have the sole power of impeaching." Article Ninth, § 2 of the Constitution of Connecticut provides, in relevant part: "All impeachments shall be tried by the senate. . . ." Article Ninth, § 3 of the Constitution of Connecticut provides, in relevant part: "The governor, and all other executive and judicial officers, shall be liable to impeachment. . . ." The court does not accept the argument set forth in the defendants' memorandum of law that the Constitution of Connecticut supports the position that a fire district in West Haven, Connecticut retains the power to impeach a duly elected official of said district.
In support of their position, the defendants also cite General Statute § 7-148 regarding the establishment and powers of a municipal ethics CT Page 9803 commission. While the Allingtown District may have had authority to have an ethics commission as a district, as defined under § 7-148, the district did not have one at the time of the occurrence of the alleged impeachable charges. The district did not have a Code of Ethics except that code which existed in the minds of the defendants on June 16, 2001, when they appointed themselves as a two person Ethics Commission. Each impeachable charge levied was not referenced to any specific section of any Code of Ethics; nor was each impeachable charge referenced to any specific state statute. The defendants threw everything they could, but the kitchen sink, against the plaintiff, hoping that one charge would hit its mark.
The answer to the question of the Fire District's ability to impeach the plaintiff is an unequivocal no. The Constitution of Connecticut leaves little doubt that an impeachment proceeding may be brought and tried only in the General Assembly.
Even if the Board did possess the power of impeachment, the courts are empowered to hear certain challenges to proceedings undertaken under the power of impeachment. While it is true that the judiciary cannot interfere with impeachment powers properly conferred on a legislative body, the legislative body must be "validly acting within the scope of its impeachment authority. Kinsella v. Jaekle, 192 Conn. 704, 723, 475 A.2d 243
(1984); Smith v. Brantley, 400 So.2d 443 (Fla. 1981).
 "A court acting under the judicial power of article fifth of the constitution may exercise jurisdiction over a controversy arising out of impeachment proceedings only if the legislature's action is clearly outside the confines of its constitutional jurisdiction to impeach any executive or judicial officer, Conn. Const. Art. IX, 3; or egregious or otherwise irreparable violations of state or federal constitutional guaranties are being or have been committed by such proceedings." Kinsella v. Jaekle, supra, 723.
"It is axiomatic that no branch of a government organized under a constitution may exercise any power that is not explicitly bestowed by that constitution or that is not essential to the exercise thereof." Id., 723; Marbury v. Madison, 5 U.S. (1 Cranch) 137, 176, 2 L.Ed. 60
(1803); State v. Clemente, 166 Conn. 501, 533, 353 A.2d 723 (1974); opinion of the Judges of the Supreme Court as to Constitutionality ofSoldiers' Voting Act, 30 Conn. 591, 593-94 (1862).
This court can exercise jurisdiction because, clearly, the defendants CT Page 9804 had no constitutional or statutory right to conduct an impeachment. Even if defendants did possess that power, the Superior Court could exercise jurisdiction in this impeachment controversy as the plaintiff has alleged that egregious and otherwise irreparable violations of constitutional guarantees are being or have been committed. Kinsella v. Jaekle, supra, 726; People v. Hayes, 82 Misc. 165,143 N.Y.S. 325 (Sup.Ct. Special Term (1913)); Ferguson v.Maddox, 114 Tex. 85, 100, 263 S.W. 888 (1924). "If the legislature shall attempt to encroach upon constitutional restrictions, it will become the solemn duty of the court to declare such an attempt illegal and the act void." Kinsella v. Jaekle, supra, 727;Pratt v. Allen, 13 Conn. 199, 132 (1939). "Moreover, the power of impeachment under the state constitution must also be exercised in a manner consisted with the requirements of the federal constitution." U.S. Const., Art. VI; Reynolds v. Sims, 377 U.S. 533, 845 Ct. 1362,12 L.Ed.2d 506 (1964); Neal v. Delaware, 103 U.S. 370, 26 L.Ed. 567 (1880);Ex Parte Siebold, 100 U.S. 371, 25 L.Ed. 717 (1879); M'Culloch v.Maryland, 17 U.S. (4 Wheat.) 316, 4 L.Ed. 579 (1819). The proceedings, as constituted, did not afford the plaintiff the proper due process of law.
The court also notes that even if the defendants were acting as a temporary and informal "Ethics Commission" for the District, courts will exercise jurisdiction where fraud, corruption, improper motives or influences, plain disregard of duty, gross abuse of power or violation of law enter into or characterize the actions taken. McAdam v. Sheldon,153 Conn. 278, 216 A.2d 193 (1965); Whitney v. New Haven, 58 Conn. 450,457, 20 A. 666 (1890); see, Baker v. Kerrigan, 149 Conn. 596, 183 A.2d 268
(1962); Peterson v. Norwalk, 150 Conn. 366, 375, 190 A.2d 33 (1963). After reviewing the allegations and the evidence, the court, for the purposes of ruling on the motion to dismiss, finds that the plaintiff has alleged sufficient facts regarding improper motive or influences, disregard of duty, abuse of power and violation of law to allow the court to exercise its jurisdiction over the plaintiff's action.
The court also finds that the controversy is a justiciable controversy, not involving any violation of the separation of powers doctrine. The defendants, acting as the Board of Fire Commissioners, possessed no impeachment powers. This is not a political question as the court is not invading the impeachment domain of the General Assembly.
 "The principles that underlie justiciability are well established. Justiciability requires (1) that there be an actual controversy between or among the parties to the dispute . . .; (2) that the interests of the parties be adverse . . .; (3) that the matter in controversy be capable of being adjudicated by CT Page 9805 judicial power . . ., and (4) that the determination of the controversy will result in practical relief to the complainant."
Nielsen v. State, supra, 6; State v. Nardini, 187 Conn. 109, 111-12,445 A.2d 304 (1982); Pellegrino v. O'Neill, 193 Conn. 670, 674,480 A.2d 476, cert. denied, 469 U.S. 875, 105 S.Ct. 236, 83 L.Ed.2d 176
(1984).
The court must construe the factual allegations contained in the pleadings, affidavits and exhibits broadly in the plaintiff's favor and presume them to be true for the purpose of ruling on a motion to dismiss. In doing so, the court finds it has jurisdiction and, in doing so, rejects the defendants' separation of powers argument.
 III.
The defendants next argue that the court lacks jurisdiction based on the plaintiff's failure to exhaust his administrative remedies. This argument is without merit. The court, having determined that the "impeachment" proceedings conducted by the defendants was illegal and without color of law, directs the defendants' attention to General Statutes[9] § 52-491 through § 52-494 where the legislature has conferred jurisdiction of a quo warranto complaint to the Superior Court. Additionally, General Statutes[10] § 52-485 gives the Superior Court jurisdiction for a mandamus action.
The court agrees with the plaintiff that neither the Freedom of Information Commission nor the State Ethics Commission can provide a remedy vested solely with the Superior Court. Courts will not require the exhaustion of administrative remedies, where no such remedies exist.State ex rel. Golembeske v. White, 168 Conn. 278, 282 (1975). The doctrine of exhaustion of administrative remedies does not deprive the court of jurisdiction to hear a mandamus action. Id.
The Freedom of Information Commission and the State Ethics Commission do not have statutory authority to hear the plaintiff's quo warranto or mandamus complaints. These agencies cannot unseat an illegal office holder; declare a vacancy in an office; or establish the plaintiff's right to his elected "position. There are no administrative remedies to exhaust. The court, therefore, rejects the defendants' argument that the plaintiff has failed to exhaust his administrative remedy.
 IV.
The defendants further argue that the court lacks subject matter CT Page 9806 jurisdiction because the summons and complaint filed by the plaintiff do not contain a return date. The court's inspection of the original summons and complaint reveal that a return date is present on the face of these documents.
The defendants, in raising this issue, cite no case law, no statutory law or Practice Book provisions to support their position. Even if those documents lacked on return date or had an erroneous return date, it would not necessarily be a fatal defect. The court looks to General Statute[11] § 52-72 regarding amendment of process and appellate decisions regarding the interpretation of the intent of § 52-72.
General Statute § 52-72 is a remedial statute that must be liberally construed in favor of those whom the legislature intended to benefit. Coppola v. Coppola, 243 Conn. 657, 664, 707 A.2d 281 (1998). Cases should be resolved on their merits rather than dismissed for some technical flaw. Id.; Andrew Ansaldi Co. v. Planning and ZoningCommission, 207 Conn. 67, 75-76, 540 A.2d 59 (1988). Where a decision as to whether or not a court has subject matter jurisdiction is required, every presumption favoring jurisdiction must be given. Olympia MortgageCorp. v. Klein, 61 Conn. App. 305, 308 ___ A.2d ___ (2001); Haigh v.Haigh, 50 Conn. App. 456, 460-61, 717 A.2d 837 (1998).
The apparent intent of the legislature in enacting § 52-72 was to prevent the loss of jurisdiction merely because of a defective return date. Olympia Mortgage Corp. v. Klein, supra; Concept Associates, Ltd.v. Board of Tax Review, 229 Conn. 618, 623, 642 A.2d 1186 (1994).
The court finds that the defendants have suffered no prejudice. Their ability to timely appear and defend themselves has not been hindered or delayed. The court therefore rejects the defendants' claim.
 V.
Lastly, the court rejects the defendants' argument that the plaintiff cannot avail himself of the courts because the plaintiff refused to participate in an illegal and flawed impeachment hearing, as discussed in the preceding sections.
On June 28, 2001, the plaintiff and his counsel repeatedly challenged the legality of the impeachment hearing and the procedures being followed by the defendants. The plaintiff totally refused to acknowledge the legitimacy of those proceedings. The court surmises that if the plaintiff had in any way participated in or acknowledged any legitimacy of those proceedings, the defendants would now be using that against the CT Page 9807 plaintiff, arguing that his participation conferred legitimacy and legality on the defendants' actions. The defendants and the Allingtown Fire District had no such powers of impeachment. Therefore, the court rejects this final argument by the defendants.
The court, having rejected each of the defendants' arguments, finds that the court does have subject matter jurisdiction over the plaintiff's mandamus action. Accordingly, defendants' motion to dismiss is denied.
The Court
By Arnold, J.
 Appendix A IMPEACHMENT CHARGE SHEET AGAINST JOHN SAMPERI IN HIS CAPACITY AS COMMISSIONER ON THE ALLINGTOWN BOARD OF FIRE COMMISSIONERS
The following charges all specifically relate to alleged statements made by John Samperi, while acting in his official capacity as a Commissioner of the Allingtown Board of Fire Commissioners:
 1. Dereliction of duty as you directly disobeyed a standing order of the Board of Fire Commissioners of Allingtown District to uphold the integrity and professionalism of the position of Commissioner by using racial slurs and making derogatory comments in reference to "lesbians and gays" and racist comments on or about May 23rd, 2001.
CT Page 9822
 2. Breach of duty as you failed to maintain and cultivate goodwill and cooperation of the public and fellow commissioners by displaying improper conduct and attention to duty; a lack of proper concern for the well-being of all persons in the district and a demonstrated a lack of respect and consideration for all persons in your actions and words at the public hearing on June 6, 2001.
 3. Breach of duty in that you failed to maintain proper decorum at a public meeting on June 6, 2001.
 4. Breach of duty and public faith and trust when you misrepresented the truth by stating that you had no opportunity to discuss the appointment of the one of the applicants for the position of Fire Chief when you in actuality had several meetings in the past at the public hearing on June 6, 2001.
 5. Breach of Connecticut General Statutes obligation for privacy as a Commissioner and breach of privacy laws by disseminating to the public privileged and personal information from personal interviews of applicants for the position of Fire Chief and from interviews exposing the district to potential lawsuits and liability for slanderous statements made to the public at the public hearing on June 6, 2001.
 6. Failure to meet the standard of behavior and moral and ethical obligations of a public official by being impolite and discourteous to several voters and other persons while performing official duties at the June 6, 2001 public hearing.
 7. Breach of position of trust and general policy stemming from your public criticism and public comments that, on balance, impair discipline by any fellow Commissioner and or disrupt harmony among fellow Commissioners, or have a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impede the performance of a speaker's duties or interfere with the regular operations of the Commission at the public hearing on June 6, 2001.
 8. Conduct unbecoming a Commissioner by using racial slurs and making negative references to "lesbians and gays" and other racist comments and thereby undermining confidence in your ability to perform your position as a public leader and figure of authority within the eyes of the public and schools at large within the District on or about May 23, 2001 and at the public hearing on June 6, 2001.
9. Violation of the public trust and faith in the Board of Fire CT Page 9823 Commissioners by using racial slurs and making negative references to "lesbians and gays" and other racist comments, and thereby undermining confidence in your ability to perform your position as a public leader and figure of authority within the eyes of the public and schools at large within the District on or about May 23, 2001 and at the public hearing on June 6, 2001.
 10. Unethical behavior not appropriate for a Commissioner by using racial slurs and making negative references to "lesbians and gays" and other racist comments, and thereby undermining confidence in your ability to perform your position as a public leader and figure of authority within the eyes of the public and schools at large within the District on or about May 23, 2001 and at the public hearing on June 6, 2001.
 11. Immoral statements not appropriate for a Commissioner by using racial slurs and making negative references to "lesbians and gays" and other racist comments and thereby undermining confidence in your ability to perform your position as a public leader and figure of authority within the eyes of the public and schools at large within the District on or about May 23, 2001 and at the public hearing on June 6, 2001.
 12. Breach of Fiduciary duty as a Commissioner in that you failed to obtain three bids for the repair and reconstruction of the firehouse floor on or about budget year 2000.
 13. Breach of fiduciary duty as you signed a contract for benefits for the Chief and Deputy Chief for excessive benefits past their proper entitlement and without researching their current contractual agreements on or about April 4, 2000 exposing the district to unnecessary expenditure and liability.